[Civ. No. 1669.   Third Appellate District.—November 9, 1918.]

MARY F. FRANCIS, Respondent, v. JOHN SHRADER et al., Appellants.

VENDOR AND VENDEE—VENDEE IN POSSESSION—EJECTMENT BY VENDOR —DENIAL OF VENDOR'S TITLE—STRIKING OUT ANSWER.—In an action by a vendor against a vendee in possession of land under a contract to recover possession of the land, for nonperformance of the contract by the vendee, a motion to strike from the answer of the defendant a denial that at the date of the contract, the plaintiff was the owner and in the quiet, peaceable, and exclusive possession of the land was properly granted, since the vendee in possession under a contract of sale, cannot deny the title of the vendor in an action of ejectment.

ID.—RIGHTS OF VENDOR AND VENDEE ON DEFAULT OF VENDEE.—A vendee under a contract for the purchase of real property cannot continue to hold possession after making default in the agreed payments, regardless of whether the vendor has title or not; the vendee cannot refrain from making payments as by the contract provided and continue to hold possession of the land; nor can the vendee under any circumstances be entitled to the return of the money theretofore paid while he continues in possession of the land; nor can he, after making default in his payments without legal excuse, recover any money he may have paid while the vendor was not in default, except when there has been a mutual rescission.

ID.—DEFAULT OF VENDEE—RETENTION BY VENDOR OF MONEYS PAID—EXPRESS CONTRACT UNNECESSARY.—Under a contract for the sale of land the vendor, on default of the vendee, may retain all moneys previously paid, although the contract does not contain an express agreement to that effect.

ID.—RESCISSION — NOTICE OF FORFEITURE.—On default by the vendee under a contract of sale, notice by the vendor of forfeiture of the contract and demand for the return of possession of the land do not constitute a rescission of the contract.

APPEAL from a judgment of the Superior Court of Kern County. Milton T. Farmer, Judge.

George E. Whitaker, for Appellants.

Matthew S. Platz and C. E. Arnold, for Respondent.

HART, J.—The action is in ejectment. The complaint alleged that, on the first day of June, 1911, plaintiff "was the owner of, except as against the paramount title of the United States of America," certain oil-bearing lands in the county of Kern, describing them; that, on July 29, 1911, plaintiff and one E. S. Good entered into a contract by the terms of which plaintiff agreed to sell and convey and said Good agreed to buy said lands for the sum of seventy thousand dollars, payable in installments. Said contract contained the following clause: "In the event of a failure to comply with the terms hereof, by the said party of the second part (Good), the said party of the first part (Francis) shall be released from all obligation in law or equity to convey said property, and the said party of the second part shall forfeit all right thereto." It is next alleged that, in the month of September, 1911, the West Virginia Oil Company "went into possession under

plaintiff" of said lands and that, on January 9, 1912, said Good in writing assigned all his interest under said contract to said corporation; that, on January 29, 1912, plaintiff entered into a contract with said West Virginia Oil Company extending the time of payments, and it was agreed that as part consideration for the extension of said payments the Oil Company would not remove any of the pipe or casings in any wells drilled on said land nor any of the derricks erected thereon, and that the company would pay for all labor and materials furnished on said lands and pay off all legal claims or liens filed thereon. Time was made of the essence of the contract. Plaintiff received as payment on account of the sale of said lands, from Good and from the Oil Company, fifteen thousand dollars as principal and six hundred dollars as interest, and it is alleged that a payment of five thousand dollars, due on April 29, 1912, was not paid. On October 1, 1912, plaintiff served on the Oil Company a notice of forfeiture of contract for failure to make payments, in which it was stated: "You are hereby notified that your right and title under said agreement have been forfeited and surrendered." Demand for the possession of the premises was alleged. It was also alleged that the West Virginia Oil Company, on November 30, 1912, forfeited its charter and right to do business by failure to pay its corporation license tax and that the defendants, Shrader, Lathrop, Green, Fredenall, Soale, and Meredith, at that time were the members of the board of directors of said corporation and are now its trustees in liquidation.

The answer of the defendants admits as true all the allegations of the complaint with respect to the agreements referred to therein, the default of defendants in the payments on the purchase price, and the giving of notice of forfeiture by plaintiff, but denies plaintiff's ownership of said lands; denies the allegation in the complaint that, on the first day of June, 1911, "plaintiff was in the quiet, peaceable and exclusive possession of all or any of the described premises until the possession thereof was taken by defendants on or about the month of September, 1911, or at any other time"; admits the demand made on defendants by plaintiff for the return to her of the possession of said lands, but alleges that, at the time of the demand so made, the plaintiff failed, neglected, and refused to pay or to offer to pay or return either to the West Virginia Oil Company or the trustees in liquidation of said

company the moneys received by plaintiff for and on account of the purchase price of said lands, and has ever since failed, refused, and neglected to repay or return the moneys so received by her; denies that said defendants, ever since the twenty-ninth day of April, 1912, have withheld, unlawfully, the possession of said lands from plaintiff, or have unlawfully excluded, or unlawfully now exclude, plaintiff from the possession of said lands, or any part thereof; denies that defendants have not any right, or at any time never had any right, to the possession of said lands, but, "on the contrary, these defendants allege" that at all times since the month of September, 1911, they have had the right to such possession, and still have the right to such possession, and will continue to have such right "until the plaintiff shall pay to them as trustees of said West Virginia Oil Company the sum of fifteen thousand six hundred dollars so paid to and received by plaintiff from the said West Virginia Oil Company for and on account of the purchase price of said lands."

The defendants also filed a cross-complaint by which they seek to recover the said sum of fifteen thousand six hundred dollars paid by the said company to the plaintiff on account of the purchase price of said lands. Said cross-complaint sets up the several agreements referred to in plaintiff's complaint, the notice of forfeiture, and demand of plaintiff for the restitution of the premises; alleges that the plaintiff failed and refused, and now still fails and refuses, to refund to the defendants the moneys paid by the Oil Company on the purchase price of the lands, and that the defendants as trustees, etc., are entitled to hold the possession of said lands until said moneys are paid over by the plaintiff to the defendants.

The plaintiff demurred to the answer and to the cross-complaint and moved to strike from the answer the allegations denying plaintiff's ownership of and right to the possession of the land, that on June 1, 1911, or at any other time, the plaintiff was in the quiet, etc., possession of the lands and until defendants took possession thereof in September, 1911, that defendants, ever since April 25, 1912, have unlawfully withheld possession of said lands from plaintiff and have, unlawfully, excluded and now unlawfully exclude plaintiff from the possession thereof, that defendants have no right to the possession of said lands, and that defendants are entitled to the possession thereof until the plaintiff repays to them as

trustees, etc., all moneys received by her from the said Oil Company as part of the purchase price of said lands.

The court overruled the demurrer to the answer, sustained the demurrer to the cross-complaint without leave to amend, and granted the motion to strike from the answer the averments above specified as those to which said motion was addressed, and rendered judgment in favor of the plaintiff. From said judgment the defendants prosecute this appeal.

The motion to strike from the answer the denial that the plaintiff was the owner of the lands and that she was, by reason of such ownership, on the first day of June, 1911, in the quiet, peaceable, and exclusive possession of said lands, was properly granted upon the ground that the vendee in possession under a contract for the sale of land cannot deny the title of the vendor in an action in ejectment.    (39 Cyc. 1614; Tyler on Ejectment, p. 558; *Garvey* v. *Lashells,* 151 Cal. 533, [91 Pac. 498] ; *Gervaise* v. *Brookins,* 156 Cal. 107, 108, [103 Pac. 332].)

The other portions stricken out involved mere legal conclusions, and also the allegations with respect to the failure and refusal of the plaintiff to pay back the moneys she had received from the Oil Company on the purchase price of the lands and the right of the defendants to retain such possession until such moneys were returned to the vendee or its trustees in liquidation, the defendants herein.    The order striking from the answer the latter allegations and the order sustaining the demurrer to the cross-complaint, involve and present the principal point made by the appellants, viz.: That appellants, as is their contention, have the right, under the contract for the sale of the lands, "to recover the payments made on it [said contract] ; that the contract does not warrant the plaintiff retaining the payments when she forfeited the defendants' rights under the contract, and that before the plaintiff can maintain the action she must return the payments made."

It is to be noted that nowhere in the answer or in the cross-complaint is there any allegation showing or tending to show that the plaintiff was guilty of any default under the contract, nor is there any statement or allegation in either of those pleadings of the defendants denying or pretending to deny that the Oil Company was not in default in its payments according to the terms of the contract.    To the contrary, the

defendants in their pleadings expressly and directly admit that the Oil Company was in default in its said payments and had been so for a long period of time, and offer no excuse for such default. The defendants stand upon the bald proposition that, the contract of sale not being completed or consummated, though through no fault of the plaintiff, and the latter having received a large sum of money on the purchase price, said money ought to be returned to them before they are required to give up possession of the property, notwithstanding that the Oil Company, vendee in possession, refused to go on with the fulfillment of the terms of the agreement. They undertake to support this position by the statement that all that the contract provided for in the way of a forfeiture was that, in case of default by the Oil Company in the payments on the purchase price, it was to forfeit all right in the property, and that the casings and derricks, used in the production of oil from the lands, were to revert to the plaintiff; "that the contract is entirely silent as to the payments—there was nowhere in it any stipulation that they [the moneys paid] should be forfeited to the plaintiff." It is asserted that the "notice of forfeiture given by the plaintiff bears out this contention."

While all that the defendants say as to the language of the forfeiture clause of the contract and that of the notice declaring the contract at an end and the Oil Company's forfeiture of its right to proceed with the consummation of the contract, is true, we are in no doubt as to the soundness of the respondent's position that the defendants have not shown that they are entitled to the return of the moneys paid to the plaintiff under the contract as a condition precedent to the return to the plaintiff of the possession of the lands or at all.

Counsel for the plaintiff, in their brief, well and succinctly state the law in this state respecting the rights of the parties to contracts such as the one involved herein as follows: "It is now the settled law of this state that a vendee under a contract for the purchase of real property cannot continue to hold the possession thereof after making default in the payments as therein provided, regardless of whether the vendor has title or not; and that the vendee cannot refrain from making payments as by the contract provided, and also continue to hold possession of the land; nor can the vendee under any circumstances be entitled to the return of the money by him

theretofore paid thereunder while he continues to hold posses-
sion of the land; nor can the vendee after making default in
his payments without legal excuse ever recover the return of
any of the money he may have paid thereon when the vendor
was not in default of anything on his part to be kept and per-
formed, except when there has been mutual rescission'' (citing
*Glock* v. *Howard & Wilson Colony Co.*, 123 Cal. 10 et seq.,
[69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713]; *Haile* v.
*Smith*, 128 Cal. 419, [60 Pac. 1032]; *Brushi* v. *Quail Mining
etc. Co.*, 147 Cal. 120, 123, [81 Pac. 404]; *Garvey* v. *Lashells*,
151 Cal. 526, 531, [91 Pac. 498]; *Oursler* v. *Thacher*, 152 Cal.
739, 745, [93 Pac. 1007]; *Gervaise* v. *Brookins*, 156 Cal. 103,
108, [103 Pac. 329]; *List* v. *Moore*, 20 Cal. App. 616, [129
Pac. 962]; *Skookum Oil Co.* v. *Thomas*, 162 Cal. 539, [123
Pac. 363]; *Champion Min. Co.* v. *Champion Mines*, 164 Cal.
205, 213, [128 Pac. 315].)

There is not shown in this case, nor is it in any way pre-
tended, that there was a repudiation or abandonment of the
contract by plaintiff or a consent to a rescission thereof by
her. The notice of forfeiture and demand of possession
clearly shows that she stood squarely upon the terms of the
contract.

The contention that the plaintiff is not entitled to retain
the moneys paid to her as part of the purchase price for the
reason that there is no express covenant in the contract that
she may do so upon the forfeiture for breach of the contract
of the vendee's right to consummate the purchase and notice
thereof and demand for restitution of the premises by the
vendor, is answered by the cases above named, and notably
by the case of *Glock* v. *Howard & Wilson Colony Co.*, 123
Cal. 1, [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713],
where the principles governing such contracts as the one
here are elaborately considered and ably expounded. The
following is what the court in that case, among other things,
said:

''When an equitable showing is not made to excuse the
breach, the vendor has the right in equity, as he always has
in law, to retain the moneys paid by the vendee. Therefore,
we have said that it matters not in such contracts that the
parties have declared that the vendor may retain the moneys
paid as stipulated damages. The name which the parties
give does not alter the fact nor change the vendor's rights.

If it be said that the clause for stipulated damages is void, still the vendor is entitled to retain the money. Thus, in *Hansbrough* v. *Peck*, 5 Wall. 497, [18 L. Ed. 520], the supreme court of the United States, having under consideration this identical question, says: 'No rule in respect to the contract is better settled than this: That the party who has advanced money, or done an act in part performance of the agreement, and then stops short and refuses to proceed to its ultimate conclusion, the other party being ready and willing to proceed and fulfill all his stipulations according to the contract, will not be permitted to recover back what has thus been advanced or done.'

"In precise illustration of the proposition may be quoted the language of the learned Chancellor Walworth, in *Egerton* v. *Peckham*, 11 Paige (N. Y.), 352: 'The contract, it is true, contains a general provision that if default be made in either of the payments Strobeck shall forfeit all the previous payments and give up possession of the premises. *This, however, is but the legal effect of the contract without such a provision.* (Italics ours.) For, if no such provision had been contained in the agreement, the defendant might have brought an action of ejectment to recover the possession of the premises, which ejectment suit this court would not have restrained, except upon the terms of paying the balance of the purchase money and the costs of suit. Nor could the payments already made pursuant to the terms of the contract have been recovered back if the vendee had refused to complete his purchase, *even if this clause of forfeiture had not been inserted in the contract.*'" (Italics ours.)

In a concurring opinion by Mr. Justice Harrison in the Glock case and concurred in by Justices Garoutte and Van Fleet, it is said: "The provision that in case of default by the plaintiff to comply with his agreement he should forfeit his right to whatever moneys he might theretofore have paid, and the defendant should be released from all obligation to convey the property, was but a declaration in express terms of what would have been the legal rights of the parties without such provision. The plaintiff had agreed to pay the money to the defendant as a condition precedent to his right to demand a conveyance of the land, and as the consideration for the defendant's agreement to make the conveyance, and he could not by his mere default become entitled to repossess

himself of the money which he had paid under this express agreement.''

In *List* v. *Moore,* 20 Cal. App. 623, [129 Pac. 964], it is said, referring to the cases cited by the attorneys therein: ''It is declared that the right of the vendor to retain the part of the purchase price paid after the default of the vendee is independent of any express clause in the contract for forfeiture of rights or for retention of the purchase money as liquidated damages, that such clauses are merely declarations in express terms of the legal rights of the parties under such a contract, without them, and that the validity of such express clauses is immaterial. It is furthermore held that in such case it is only where the vendor, after default of the vendee, agrees to a mutual abandonment and rescission that the vendee is entitled to receive the purchase money paid.''

We have said that the notice of the forfeiture and demand for the return to plaintiff of the possession of the lands did not constitute an abandonment and rescission of the contract. In *Oursler* v. *Thacher,* 152 Cal. 745, [93 Pac. 1007], the notice of forfeiture is very much like the one in this case, and it was in that case held that the notice or the act of giving it did not involve or constitute a rescission. The court said: ''Plaintiffs had the right without abandoning or rescinding the contract to insist that by the terms thereof defendants, by reason of their default, had no further right thereunder. . . . Their notice of forfeiture and demand for possession of the mining property were strictly in line with this claim, and were in no sense a repudiation or abandonment of the contract or a consent to a rescission thereof. . . . There being no rescission or abandonment of the contract by the plaintiffs, and the plaintiffs at all times having insisted on the contract and stood on its terms, and being in no respect in default, the vendees in default were not entitled to recover either the moneys paid by them to plaintiffs or the moneys expended in developing the property.'' (See, also, *Glock* v. *Howard & Wilson Colony Co., supra,* and cases therein cited, on what does and does not constitute in such a case as this a rescission of the contract.)

There is no occasion for the entertainment of the remotest doubt that the case here comes within the doctrines of the

Glock and other cases above cited, and that the judgment appealed from should, therefore, be affirmed. It is so ordered.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 7, 1919.

Angellotti, C. J., Sloss, J., Lawlor, J., and Lennon, J., concurred.