[Civ. No. 2043. Third Appellate District.—December 10, 1919.]

JAMES F. RUSSELL, Respondent, v. ELMEDA HAWXHURST et al., Appellants.

[1] VENDOR AND VENDEE—DEFAULT BY VENDEE—ELECTION BY VENDOR TO DECLARE RIGHTS FORFEITED—RIGHT TO POSSESSION.—A vendee in a contract of sale of property which is to be paid for by installments, upon default in the payment of any of which the vendor, as authorized by the contract, has elected to treat and declare the contract null and void and the rights of the vendee forfeited, cannot retain possession of the property and at the same time refuse to pay the installment or installments past due.

[2] ID.—FAILURE OF VENDEE TO COMPLY WITH CONTRACT—DEFECTIVE TITLE OF VENDOR NO DEFENSE.—A vendee in a contract of sale of property cannot retain possession of the property and refuse or fail to comply with terms of the contract as to the payment of the purchase price as specified and stipulated in such contract, and then, in an action by the vendor to recover possession, set up as a defense the fact, if it be a fact, that the title of the vendor is defective or not satisfactory in certain respects.

[3] ID.—DEFECT OF TITLE—DEFAULT OF VENDEES—ACTION IN EJECTMENT—DEFENSE—RESCISSION.—The vendees in a contract of sale of real property cannot breach their contract by noncompliance with the covenant therein as to the payment of the purchase price of the property upon the ground that the title is defective or in an unsatisfactory condition, and then set up the fact of the defectiveness of the title as a defense in an action by the vendor to recover possession for default in the payment of the purchase price, unless they can also show that they either rescinded or offered to rescind the contract and offered to return to the vendor the possession of the property which is in them.

[4] ID.—FILING OF CROSS-COMPLAINT—INSUFFICIENT AS A RESCISSION. In an action by the vendor to recover possession after default in the payment of the purchase price, the filing of a cross-complaint to recover the money already paid to the vendor because of fraud and defect of title does not amount to a rescission of the contract, the vendees not having rescinded or offered to rescind after their discovery of the facts but having insisted on holding possession of the property.

[5] ID.—DEFAULT OF VENDEE—RETENTION OF POSSESSION—DEFECT OF TITLE—RETURN OF MONEY.—A vendee under a contract for the purchase of real property cannot continue in possession thereof after making default in the payments as therein provided, regardless of whether the vendor has title or not, and cannot refrain from making payments as by the contract provided, and also continue to hold possession of the land; nor can the vendee under any circumstances be entitled to the return of the money by him theretofore paid thereunder while he continues to hold possession of the land; nor can the vendee after making default in his payments without legal excuse ever recover the return of any of the money he

2. Defective title as defense to action for purchase price against purchaser in possession, notes, 3 Ann. Cas. 365; 21 L. R. A. (N. S.) 363.

5. Right of purchaser in possession to rescind in action for defective title, note, 21 L. R. A. (N. S.) 395.

Right of vendee to recover payments made where title is defective, note, L. R. A. 1918B, 554.

may have paid thereon when the vendor was not in default of anything on his part to be kept and performed, except when there has been mutual rescission.

APPEAL from a judgment of the Superior Court of Siskiyou County. James F. Lodge, Judge. Affirmed.

The facts are stated in the opinion of the court.

Thomas Drake, Collier & McNamara and Tapscott & Tapscott for Appellants.

C. J. Luttrell and Taylor & Tebbe for Respondent.

HART, J.—Plaintiff brought the action for the purpose of having declared null and void a certain agreement between plaintiff and defendant, John W. Hawxhurst, and for restoration to him of the possession of the real property described therein. Practically, the action is in ejectment. The trial was before the court, sitting without a jury. Judgment was in favor of plaintiff, from which judgment defendants prosecute this appeal.

The agreement in question was dated June 20, 1912. By its terms the party of the first part (plaintiff) agreed to sell and convey to the party of the second part (defendant John W. Hawxhurst) and the second party agreed to buy 640 acres of land in Siskiyou County, "horses, cattle, farm tools and implements and a 320-inch water right." Two hundred dollars was paid the party of the first part on the execution of the agreement; eight hundred dollars and a mortgage of two thousand dollars on 320 acres of timber land in Klamath County, Oregon, to be paid on or before July 6, 1912; one thousand two hundred dollars to be paid on or before December 20, 1912, and other payments, aggregating seventeen thousand dollars, to be paid before June 20, 1917, deferred payments to bear interest at the rate of six per cent per annum. The second party agreed to pay all taxes beginning with the year 1912. It was agreed that the second party should enter into possession of the premises upon the payment of said eight hundred dollars on or before July 6, 1912, and upon the giving of said mortgage for two thousand dollars, which was to be executed to one J. F. Maguire, by Elmeda Hawxhurst, the wife, and Ethel Hawx-

hurst, the daughter, of John W. Hawxhurst. "The party of the second part agrees to convey a first water right of twenty inches and after a second water right of one thousand inches is taken out by the Churchill Company, a third water right of three hundred more or less inches free and clear of the waters of Butte Creek, Siskiyou County, California." The first party agreed, upon the payment of one thousand two hundred dollars on December 30, 1912, and one thousand dollars on June 20, 1913, to give a clear bill of sale to certain personal property, consisting of horses, cattle, farm implements, etc. It was agreed that water from Butte Creek should be used by the Pollock Lumber Company for its boiler on the premises described and the mill to be allowed free use of land occupied by it as long as it should operate the mill. Time was made of the essence of the contract, and in case of default of the second party in any of its covenants, at the option of the first party, the contract should become null and void and all payments made by the second party were to be retained by the first party as reasonable rent of the premises, first party to take immediate possession of said premises.

The complaint alleged that the second party to said contract paid plaintiff one thousand dollars and caused to be executed and delivered to J. F. Maguire a mortgage for two thousand dollars on the timber lands mentioned in the contract, and that second party went into possession of said real estate and personal property on the fifth day of July, 1912; that on or about the 9th of October, 1912, defendant John W. Hawxhurst sold and assigned to the defendants, Elmeda, Ethel, and Walter R. Hawxhurst (the latter his son), all his right, title, and interest in and to said agreement; that defendants failed to pay the sum of one thousand two hundred dollars, due under said contract on the 20th of December, 1912, and failed and refused to pay the state and county taxes levied against the property for the year 1912. That on the 24th of January, 1913, plaintiff went to the premises described in the agreement and informed defendant Walter R. Hawxhurst, who was then in possession of said lands and personal property, that by reason of the failure of said defendants to carry out the provisions of said agreement plaintiff desired the return of said property and

demanded the same, but that defendants refused to permit plaintiff to retake possession of said property.

Defendants demurred to the complaint upon various grounds, but the court overruled the demurrer and defendants answered and also filed a cross-complaint. Therein they pleaded certain fraudulent transactions on the part of plaintiff and his agent, J. F. Maguire, which induced defendant John W. Hawxhurst to enter into said agreement; that during a large part of the irrigating season of 1912 there was not to exceed fifteen inches of water available; that plaintiff and his agent, Maguire, knew their representations with regard to said water rights were incorrect; that 320 inches of water were necessary to obtain satisfactory results in cultivating said property; that during the fall and winter of 1912 and the early part of 1913 negotiations were in progress between defendants and plaintiff for an amicable adjustment of all matters pending under said agreement; that plaintiff took forcible possession of the property on or about May 7, 1913.

It was further alleged both in the answer and the cross-complaint that the plaintiff and said Maguire accompanied said John W. Hawxhurst on a visit to the property in question and inspected the same, and that the former, in referring to the character and the value of the land, placed special emphasis on the value of the "saw timber" upon a portion of said premises, "and upon the fact that there was sufficient saw timber then growing thereon to enable said defendant, John W. Hawxhurst, to obtain from the sale thereof sufficient funds from which to make the one thousand dollar payment referred to in said agreement . . . as maturing on June 20, 1913"; that, relying upon the truth of the several representations made by the plaintiff and said Maguire, said Hawxhurst entered into the said agreement, made the two hundred dollar payment referred to, and caused the mortgage for two thousand dollars mentioned in said agreement to be executed and delivered, and thereupon entered into the possession of said real estate mentioned in the agreement of sale, "saving and excepting the aforesaid water rights and the rights theretofore conveyed by said plaintiff to one Elmer Pollock, by an instrument dated February 1, 1910, and recorded in the office of the county recorder of Siskiyou County, California, on February

10, 1913." As to this charge in the answer, the cross-complaint was more explicit, and said that the plaintiff, previously to the time at which the agreement for the sale of the land was entered into between him and John W. Hawxhurst, entered into an agreement with said Pollock whereby the plaintiff agreed to sell to Pollock all of the merchantable saw timber situated upon a portion of the land described in the agreement with Hawxhurst, and that said Pollock or his assigns should have the right to occupy such portion of the real estate in question for a mill site so long as said Pollock or his assigns desired to operate a sawmill thereon, and that said Pollock should have immediate possession of said land, with the right to take and remove therefrom all merchantable timber over twelve inches in diameter at the stump; that, thereafter, the rights acquired by said Elmer Pollock, under and by virtue of his said agreement with plaintiff, were sold, assigned and transferred to Johnson Pollock Lumber Company, a corporation, "and that subsequent to the execution of the last-mentioned agreement merchantable lumber over twelve inches in diameter at stump was removed from the aforesaid land thereunder."

The defendants in neither their answer nor their cross-complaint directly charge that the plaintiff was guilty of fraud, or that he was himself in any way in default as to his obligation. It is, as above shown, merely alleged, as to the water rights, that the representations made by plaintiff as to the extent thereof were "incorrect." As to the agreement between plaintiff and Pollock, which was entered into more than two years prior to the date of the agreement between plaintiff and John W. Hawxhurst, it is manifest that said Hawxhurst was fully informed of the same, since the agreement between him and plaintiff contained this provision: "Also agreed between the parties hereto that water from Butte Creek through pipe now laid in the ditch is to be allowed to the Pollock Lumber Company to be used at the boiler in their mill on the premises above described. Said mill to be allowed free use of land now occupied by them as long as they operate the mill." The defendants, both in their answer and cross-complaint, admit that they knew of the above provision in the agreement, but in neither of those pleadings do they say that John W. Hawxhurst was not familiar with the full terms of the Pollock agreement,

nor is it charged in either of said pleadings that there was any misrepresentation by plaintiff as to said Pollock agreement or the character or quantity of timber the Pollock Company was thus authorized to take from the premises.

It is manifest that the fact of the Pollock transaction, as it was explained in the pleadings of the defendants, constituted neither a defense to plaintiff's action nor, as we shall later see, a ground for the relief prayed for in the cross-complaint. Indeed, even if the averments as to that matter were in all respects sufficient in stating legal or equitable reasons for the annulment of the contract, they would not disclose a defense to this action, in the absence of averments showing a rescission or an offer to rescind the· contract by the defendants on the ground that they entered into the agreement under a misrepresentation by the plaintiff that the premises were entirely free from any burden. The averments as to the Pollock matter were properly stricken both from the answer and the cross-complaint.

Reverting to the matter of the water rights which the plaintiff agreed to convey to the defendants with the land, we will more specifically consider whether the averments as to the water rights would or would not constitute a defense to plaintiff's cause of action. Both pleadings of the defendants expressly admit that John W. Hawxhurst entered into the possession and occupancy of the premises described in the contract of sale immediately upon the execution of said contract and remained in such possession and occupancy from the fifth day of July, 1912, down to the twelfth day of October, 1912, when he sold and transferred the contract and delivered possession of the property to the other defendants. If, as their pleadings, as they stood before the matter referred to was stricken therefrom, show to be true, the defendants discovered that the plaintiff did not own and could not convey all the water rights which, by the contract, he agreed to convey to John W. Hawxhurst, or, if in any other particular the representations by plaintiff as evidenced by his agreement as to the property, were by them discovered to be untrue or incorrect, and the defendants by reason thereof would not secure what the plaintiff agreed to convey to them, then, upon the discovery of the fact, if they desired for that reason to withdraw from the agreement, they should have rescinded the contract or offered to do so

by tendering back to plaintiff possession of the property and demanding a return to them by plaintiff of the money they had already paid on the transaction. But this was not done, so far as we are advised by either of the pleadings of the defendants. To the contrary, those pleadings themselves show, as seen, that John W. Hawxhurst held on to the possession of the property until he transferred the contract and his rights thereunder to the other defendants, neither rescinding nor offering to rescind the contract or making objections to it in any form. Nor did the other defendants, to whom John W. assigned the contract, rescind or offer to rescind, but kept possession of the property and refused to surrender possession thereof to plaintiff or to pay him the installment then past due under the contract, when the latter, having declared their rights forfeited or elected to retake possession for default in the payment of the installment referred to, demanded a redelivery to him of such possession. There is nothing in the answer, or, indeed, in the cross-complaint, to the effect that any objection was ever made by any of the defendants to or against the contract upon any ground or for any reason until they were called upon to answer the plaintiff's complaint. It is true, as we have seen, that the answer contains this averment: "That during the irrigating season of 1912, said plaintiff, James F. Russell, was at all times informed as to the condition of the water for irrigation purposes on the aforesaid premises and of the consequent loss of crops resulting from lack of irrigation water thereon; that, from time to time during the fall and winter of 1912, and the early part of 1913, negotiations were in progress between said defendants and said plaintiff, James F. Russell, looking to an amicable adjustment of the matters pending under said agreement of June 20, 1912"—the agreement in question. What the particular matters were that were the subject of the negotiations and in process of amicable adjustment between the parties thus referred to is not explained in the pleadings of the defendants. They might have involved, so far as we can know from anything set forth in said pleadings, the proposed adjustment of differences as to the payment, as specified in the agreement, of the installments on the purchase price. But whatever might have been the matter so referred to in the answer, we are not justified in inferring

from that paragraph in the answer that a rescission of the agreement had been made or proposed by the defendants or any of them. On the contrary, reading it in connection with the admission in the answer that defendants, to whom John W. Hawxhurst transferred the agreement and his rights thereunder, refused to redeliver possession of the premises to the plaintiff on his demand for such possession because of the default of the defendants in the payment of the installment on the purchase price which was then past due, the inference seems to be irresistible that the defendants did not intend to say by said averment that they had rescinded or offered to rescind the contract.

[1] A vendee in a contract of sale of property which is to be paid for by installments, upon default in the payment of any of which the vendor has, as authorized by the contract, elected to treat and declare the contract null and void and the rights of the vendee forfeited, cannot retain possession of the property and at the same time refuse to pay the installment or installments past due. [2] Nor can the vendee retain possession of the property and refuse or fail to comply with the terms of the contract of sale as to the payment of the purchase price as specified and stipulated in such contract and then, in an action by the vendor to recover possession, set up as a defense the fact, if it be a fact, that the title of the vendor is defective or not satisfactory in certain respects. (*Garvey* v. *Lashells*, 151 Cal. 526, 531, [91 Pac. 498, 500].) In that case, one of the defenses set up as against the plaintiff's action in an action in ejectment against the vendees in possession under such a contract as the one involved herein was that the title of the vendors to the property which was the subject of the contract was not good. Chief Justice Angellotti (then associate justice), the author of the opinion in that case, said: "If a perfect title was to be conveyed, and the vendor is unable to give such a title, the vendee has appropriate remedies, but he cannot keep both the property and the purchase money. The rule applicable, as stated in the syllabus to *Worley* v. *Nethercott*, 91 Cal. 512, [25 Am. St. Rep. 209, 27 Pac. 767], which since has been declared to be a correct summary of the decision (*Haile* v. *Smith*, 128 Cal. 415, [60 Pac. 1032]), is as follows: 'A purchaser of land in possession thereof under a contract of sale, by the terms of which the vendor

is to give a warranty deed of the property, conveying a good
and perfect title thereto, cannot, upon the vendor's failure
and inability to convey a good and perfect title, retain both
the land and the purchase money until a perfect title shall
be offered him, but he must pay the purchase price according
to the contract, and receive such title as the vendor is able
to give, if he chooses to retain the possession of the land,
or he may rescind the contract, restore the possession to the
vendor, and recover the purchase money paid, together with
the value of his improvements, after deducting therefrom
the fair rental value of the premises; and if he fails and
refuses to adopt either course, he is liable to an action of
ejectment by the vendor.' " (See other cases cited in *Garvey*
v. *Lashells,* on page 531 of the 128 Cal., [91 Pac. 501];
*Francis* v. *Shrader,* 38 Cal. App. 592, [177 Pac. 168, 169].)

[3] As stated in *Garvey* v. *Lashells, supra,* the defend-
ants here had available to them remedies peculiarly appro-
priate to the correction of difficulties arising from any de-
fectiveness in the title to the water rights, or to have the
contract annulled on that ground, but, as that case and all
the authorities declare, they cannot breach their contract
by noncompliance with the covenant therein as to the payment
of the purchase price of the property upon the ground that
the title is defective or in an unsatisfactory condition, and
then set up the fact of the defectiveness of the title as a
defense in an action by the vendor to recover possession
for default in the payment of the purchase price, unless
they can also show that they either rescinded or offered to
rescind the contract and offered to return to the vendor the
possession of the property which is in them.

What we have said above as addressed more to the answer
and the order of the court striking therefrom the averments
referred to is equally applicable to the cross-complaint and
the action of the court in striking therefrom like averments.
[4] While the cross-complaint asks for an annulment of
the contract on the grounds already stated, it does not
allege that, before the filing of that pleading, the defend-
ants rescinded the contract or offered in the requisite way to
do so. Indeed, as we have before declared, there is no
showing in the cross-complaint that the defendants ever
offered any objection to the contract on any ground, but
still maintained and insisted on their right to maintain,

after they had breached the contract, possession of the property down to the date of the commencement of plaintiff's action. We know of no principle upon which they may, under such circumstances, maintain the action which is the basis of their complaint. The filing of the cross-complaint did not amount to a rescission under the circumstances as disclosed by the pleadings. It would be strange if it were true that, having defaulted in the payment of an installment due on the purchase price, and not having rescinded or offered to rescind after their discovery of the defect in the title of the vendor to the water rights which the latter agreed to convey, and insisting on holding possession of the property, notwithstanding that they had lost their rights under the contract by their default in complying with its terms, the defendants could claim that by the act of filing, in an action by the plaintiff to recover possession of the property for such default, a cross-complaint for the money they had already paid to the vendor, a rescission of the contract had been worked and they, therefore, entitled to a return of the money they had paid on the purchase price. Of course, they would thus rescind the contract if it could be done in that way—that is to say, they would thus rescind the contract if, having violated its terms as to payments on the purchase price, for which default they had lost their rights thereunder, if they thought that the act of filing a cross-complaint, stating a ground for rescission, if timely or reasonably made, would itself work a rescission and they could then recover back the money which they had already paid under the contract and which they expressly agreed should be retained by the vendor as rental for the occupancy and use of the property in case they defaulted in such payments. They do not even say in their cross-complaint that they were ready and willing to pay the installment past due if the vendor would make satisfactory arrangements relative to the water rights or would perfect his title thereto, assuming that his title was not perfect or was defective, or the quantity of water which he agreed to convey was not to be had. As stated above, in considering the order striking out as applied to the answer, so we repeat here in reference to the order as applied to the cross-complaint, that the duty of the defendants was, upon discovering the defectiveness of the vendor's title to the water rights

described in the contract or any other matter in the transaction which was misrepresented in the agreement by the vendor, to have rescinded the agreement at once and offered to restore possession of the property to the vendor and demanded a return of the money already paid by them on the purchase price, if they desired to go no further with the transaction. In that case, if the vendor had refused to accept the offer of rescission and the possession of the property and to return the money, then there would have accrued to them a right of action for an annulment of the contract and for the recovery back of the money which they had paid the vendor under the agreement. So long as they refused to make the payment due or past due on the purchase price and at the same time insisted on holding possession of the property, they had no right of action for a rescission or ground for a rescission, and their answer and cross-complaint did not have the effect of changing their position as taken by them when refusing to comply with the terms of their agreement with plaintiff and their failure to rescind and offer to return possession of the property to the latter.

Having thus considered and disposed of the questions arising from the action of the court in striking from the answer and the cross-complaint the matters of special defense and for affirmative relief, the next consideration is as to the question whether the findings of fact are supported.

The evidence refers principally, of course, to the question whether the defendants were guilty of noncompliance with the contract as to the payments to be made by them on the purchase price of the property. The only evidence presented on behalf of the plaintiff was his own testimony. He testified that defendant, John W. Hawxhurst, went into possession of the property in the forepart of the month of July, 1912; that the sum of one thousand two hundred dollars to be paid, according to the terms of the agreement, before the twentieth day of December, 1912, was not paid; that he, plaintiff, paid the taxes for the year 1912; that on the twenty-fourth day of January, 1913—over a month after the twelve hundred dollar installment just referred to fell due and became payable—he went to the premises, found Walter Hawxhurst and his younger brother there and in possession thereof, and demanded possession of the property,

which said Walter Hawxhurst refused to deliver over to him. Plaintiff, after giving said testimony, rested his case, and thereupon the defendants moved for a nonsuit, which motion was denied. John W. Hawxhurst was then sworn as a witness on behalf of the defendants. By him the defendants attempted or offered to prove the affirmative allegations of the answer, which had been stricken out, and the allegations of the cross-complaint, also stricken out, and the court properly sustained plaintiff's objection to the offer. Thereupon counsel for the plaintiff stated to the court that the defendants were entitled to introduce proof in support of the denials in their answer of the allegations of the complaint that the plaintiff paid the taxes on the premises for the year 1912 and that defendants failed to pay the plaintiff the sum of one thousand two hundred dollars before the 20th of December, 1912, as called for by the contract. The defendants, however, made no effort to make such proof and rested their case upon the refusal by the court to allow them to offer proof in support of the expunged allegations of the answer and the cross-complaint.

As above shown, the contract whereby plaintiff agreed to sell and the defendant, John W. Hawxhurst, agreed to purchase the property contained this covenant: "Time is of the essence of this contract, and in case the second party shall fail to make payments as above named, and each and every one of them punctually, or within thirty days limited therefor, or failure to keep engagement herein contained, then this contract shall, at the option of the said first party, become null and void and in case of such default, all payments hereinbefore made on this contract are to be retained by and belong to said party of the first part as the agreed reasonable rent of the said premises up to the time of such default, and the first party shall, in case of such default have the right immediately to enter upon the land aforesaid without any process of law, and take immediate possession thereof, together with the improvements and appurtenances thereon and thereto belonging."

Thus, it is readily perceivable, the evidence and the findings present this situation: The defendants agreed to purchase the property in question for a sum certain, payable, a certain specified amount on the execution of the agreement and the balance in certain specified installments at specified

intervals of time, and agreed that, if they defaulted in any such payments or failed to keep any of the other vital covenants of the contract, the vendor might, within a specified time thereafter, at his option, and without the necessity of invoking any legal process for that purpose, retake possession of the premises and treat and retain as reasonable rent for the occupation and use of the property any moneys already paid under the contract. The defendants were guilty of a default in failing to pay at the time stipulated a certain amount of money on the contract, and the plaintiff, on the expiration of the time after which he was entitled, by the terms of the contract, to retake possession of the premises, if he so elected, made a demand on the defendants (assigns of the original vendee), who were then in possession of said premises, for a return of the possession of said premises to him, and that said defendants, although in default in a payment required by the contract, refused to surrender the possession of the property to the plaintiff.

[5] The case, as so stated, clearly falls within those cases in which it is held that the vendee in possession cannot hold such possession and at the same time refuse to pay the purchase price, or, in other words, that the vendee under such a contract as the one here cannot retain both the possession and the purchase price, when the latter is due and payable. The law applicable to the facts of this case is stated, upon the authority of numerous previously adjudicated cases, in *Francis* v. *Shrader,* 38 Cal. App. 592, [177 Pac. 168, 170], as follows:

"It is now the settled law of this state that a vendee under a contract for the purchase of real property cannot continue to hold the possession thereof after making default in the payments as therein provided, regardless of whether the vendor has title or not, and that the vendee cannot refrain from making payments as by the contract provided, and also continue to hold possession of the land; nor can the vendee under any circumstances, be entitled to the return of the money by him theretofore paid thereunder while he continues to hold possession of the land; nor can the vendee after making default in his payments without legal excuse ever recover the return of any of the money be may have paid thereon when the vendor was not in default of anything on his part to be kept and performed, except when

there has been mutual rescission. ∙(*Glock* v. *Howard,* 123 Cal. 10 et seq., [69 Am. St. Rep. 17, 43 L. R. A. 199, 155 Pac. 713] ; *Haile* v. *Smith,* 128 Cal. 419, [60 Pac. 1032] ; *Brushi* v. *Quail Mining etc. Co.,* 147 Cal. 120, 123, [81 Pac. 404] ; *Garvey* v. *Lashells,* 151 Cal. 526, 531, [91 Pac. 498] ; *Oursler* v. *Thacher,* 152 Cal. 739, 745, [93 Pac. 1007] ; *Gervaise* v. *Brookins,* 156 Cal. 103, 108, [103 Pac. 329] ; *List* v. *Moore,* 20 Cal. App. 616, [129 Pac. 962] ; *Skookum Oil Co.* v. *Thomas,* 162 Cal. 539, [123 Pac. 363] ; *Champion Min. Co.* v. *Champion Mines,* 164 Cal. 205, 213, [128 Pac. 315].) ''

And, as is said in *Francis* v. *Shrader, supra,* so it is true here, that there is no showing that the plaintiff repudiated or abandoned the contract either expressly or by conduct, or that he consented to a rescission thereof. The fact that he demanded possession of the property after thirty days had elapsed after the failure to pay the installment of one thousand two hundred dollars to be paid before the twentieth day of December, 1912, shows that he stood squarely upon the terms of the contract.

The very recent case of *Gaume* v. *Sheets,* 181 Cal. 119, [183 Pac. 535], cited by the appellants here, has no application to the facts of this case. There, while the contract provided that time was of its essence, it also provided that, if default by the vendees in any of the payments which were to be made at certain specified times on the purchase price of the land occurred, then, upon sixty days' notice by the vendor to the vendees, the vendor ''shall be released from all obligations in law and in equity to convey said property,'' etc. There was default in a payment and the vendor gave the vendees written notice in which he declared that he, by reason of said default, ''has elected and does hereby elect to declare said agreement null and void and all rights which you have acquired thereunder forfeited,'' further stating in the notice that, unless the vendees surrendered possession of the property to the vendor or his attorney ''on or before sixty days from the date hereof, he will commence an action against you to quiet title to said above described premises,'' etc. The notice contained no statement that the vendees, by paying the installments of the purchase price then due within the period of sixty days, could retain their rights in the property and in the contract. Mr. Jus-

tice Wilbur, speaking for the court, said that the evident purpose of the provision in the contract requiring sixty days' notice of the default by the vendor to the vendees "was to give sixty days' grace, after notice to the vendees, in which to comply with the contract," but "that the notification given by the vendor that the contract was already null and void and that the possession should be surrendered within sixty days was in effect a repudiation of the contract by the vendor and justified a rescission by the vendees." The impregnability of that conclusion in that case by the supreme court cannot for a moment be questioned, but here, as has been shown, the contract required no notice of the default to be given. It merely provided that, after the expiration of thirty days after the default, the vendor may, without resorting to legal process of any character for that purpose, himself enter upon the premises and retake possession thereof. The moment, therefore, the thirty days' period after the default expired the obligation of the vendor both in law and in equity to convey the property to the vendees *ipso facto* ceased, and there then accrued to the vendor the right to retain the moneys then already paid by the vendees under the contract as the liquidated or stipulated amount equal to the reasonable value of the use of the premises by the vendees. Or, to put the latter proposition in another form, the defendants, by their default, forfeited, in accordance with their express agreement, the right to recover back the moneys they had already paid under the contract of sale, they having agreed that the moneys so paid would be equal only to reasonable rental for the occupation and use of the premises.

We have not regarded it necessary to consider specifically the point made by the defendants that the plaintiff's complaint is amenable to objections made against it by the demurrer thereto of the defendants. It is, we think, sufficient to say that we are convinced that the complaint states, in a clear, direct, and intelligible manner, a cause of action for the relief sought by it.

The judgment is affirmed.

Ellison, P. J., *pro tem.*, and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 5, 1920.

All the Justices concurred, except Wilbur, J., and Olney, J., who voted for the granting of the petition.