[Civ. No. 2065. Third Appellate District.—February 12, 1920.]

C. G. HYMAN et al., Respondents, v. THE HARBOR VIEW LAND COMPANY (a Corporation), Appellant.

[1] VENDOR AND VENDEE—CONTRACT FOR SALE OF REAL PROPERTY—TIME OF ESSENCE—RIGHT OF FORFEITURE—DEFAULT WITHOUT LEGAL EXCUSE—RETENTION OF MONEYS PAID.—Under a contract for the sale of real property which provides that time is of the essence, and that if the vendees shall make default in any of the

---

1. Time as of essence in contracts for sale of land, note, 104 Am. St. Rep. 265.

Right of vendee in contract for sale of real property to recover payments, note, L. R. A. 1918B, 540.

payments as the same become due the contract may be rescinded at the option of the vendor, and that the vendor shall thereupon be released from all obligations in law or equity to convey said property and the vendees shall forfeit all right thereto, and all moneys paid to the vendor shall be forfeited and retained by the vendor as rent and agreed liquidated damages, upon the default of the vendees without legal excuse, the vendor is entitled to retain the moneys that have been obtained thereon.

[2] ID.—ACTION FOR DECEIT—ABILITY AND WILLINGNESS TO PERFORM—PLEADING.—In an action for deceit, where the contract is executory, the plaintiff must allege his ability and willingness to perform the contract.

[3] ID.—FRAUD—RETENTION OF POSSESSION—REFUSAL TO MAKE PAYMENTS.—A party in possession of land under an executory contract to purchase it cannot, while retaining possession, refuse, because of claim of fraud, to make the payments provided by his contract. The fact, if it be a fact, that the contract was entered into by reason of fraudulent representations of the vendor, furnish no legal justification for neglect or refusal to pay the installments when due so long as possession is retained.

[4] ID.—UNSUPPORTED FINDING OF RESCISSION—CONSTRUCTION OF NOTICES—USE OF WORD "RESCINDED."—In this action to recover from the vendor moneys paid by the vendees on a contract for the purchase of certain real property, the finding of the trial court that the vendor rescinded the contract on a given date is not sustained by the evidence, notwithstanding the vendor, in his final notice to the vendees following their default, stated that it rescinded the contract, it being apparent from that notice, when construed together with the previous notices to the vendees, that the vendor did not intend to make a technical rescission in accordance with the code provision, but only to terminate the contract in accordance with its express provision.

[5] ID.—FRAUD—RESCISSION—SURRENDER OF POSSESSION—DEFAULT—RECOVERY OF MONEYS PAID.—If, before the contract of purchase has been ended for nonpayment, the vendees surrender possession of the premises and rescind the contract, they have a right of recovery of the moneys paid upon proving fraudulent representations sufficient to justify such rescission; but, after default without legal excuse, no recovery can be had for moneys paid, unless there is a mutual rescission.

APPEAL from a judgment of the Superior Court of Los Angeles County. John M. York, Judge. Reversed.

---

4. Necessity of notice of rescission before party can be placed in default as to time for performance of contract, note, 4 A. L. R. 822.

The facts are stated in the opinion of the court.

John A. Powell and Goodwin & Morgrage for Appellant.

Richard C. Goodspeed for Respondents.

ELLISON, P. J., *pro tem.*—This action was brought to recover from the corporation defendant moneys paid by plaintiffs on a contract for the purchase of a residence lot, with the buildings and improvements thereon, situate in Los Angeles. The plaintiffs had judgment, and the defendant appeals therefrom.

On the first day of November, 1913, the defendant, as party of the first part, entered into a written agreement with the plaintiffs, as parties of the second part, whereby said party of the first part agreed that upon the performance of the covenants to be kept by the plaintiffs it would convey to them the lot and premises described therein. The plaintiffs were to pay for the said property the sum of $3,250, with interest on deferred payments at the rate of seven per cent per annum. Payments were to be made, as follows: $150 upon the execution of the agreement, and $30 per month on the first day of each and every month thereafter until the full purchase price was paid. Said $30 per month was to include interest, taxes, and insurance. The agreement contained this clause: "It is further agreed that time is of the essence of this agreement, and, if the second parties shall fail and make default in any of the payments by the second parties hereinafter promised to be made as the same may mature or become due, then this contract may be rescinded at the option of the party of the first part, and the first party shall thereupon be released from all obligations in law or equity to convey, or cause to be conveyed said property, and the second parties shall forfeit all right thereto, and all moneys paid to the first party be forfeited and retained by it as rent and agreed liquidated damages."

Plaintiffs paid the $150 agreed to be paid on the execution of the agreement, and made the agreed monthly payments of $30 per month to March 23, 1915. On the seventeenth day of March, 1915, the defendant, at the request of plaintiffs, reduced the monthly payments to be made from $30 per month to $20. After this reduction the plaintiffs were

dilatory in paying the $20 per month, as agreed, and by letter were often reminded of the delay. On December 28, 1915, the plaintiffs had defaulted in making the payment of November 1st of $20 and of December 1st of $20, and taxes agreed by them to be paid in the amount of $9.53, making in all a total of $49.53. Prior thereto, and on the ninth day of December, the defendant had addressed a letter to the plaintiffs from which we quote: ''We have to call your attention to the fact that you are now two months in arrears in the payments of your contract. In view of the fact that some time ago we reduced the monthly payments for you, we think you should make payments promptly. We cannot continue the contract in its present condition, and we will ask you to send us the two monthly payments. We also call your attention to the fact that the taxes are now past due, and we will ask you to be good enough to give this matter your attention by return mail.''

On December 13th the defendant wrote to the plaintiffs again: ''We addressed you last Thursday calling attention to the condition of your contract. We should have had an answer from you on Saturday. Up to the present time we have not heard from you, and we have to call your attention to the fact that you are two months in arrears on the payments and that this condition cannot be allowed to continue. Unless you take the necessary steps to meet these obligations we will have to protect our interest in the property by appropriate measures.''

Again, on December 21st the defendant wrote to the plaintiffs. In this letter, after calling attention to the clause in the contract hereinbefore set out in full, making time the essence thereof, and so forth, the letter proceeded: ''On December 9th we addressed a communication to you, calling your attention to the fact that you were at the time two months in arrears in your payments, and, also, that you had failed to pay the taxes, as provided in the contract. To this communication we received no reply. We then on December 13th, addressed you again, calling your attention to the fact that you had failed to reply to the previous communication, and advised you unless we did hear from you we would take the necessary steps to protect our interest in the property. To this communication we received no reply. We therefore beg to advise you

that, in view of the fact that you are in arrears in the payments on your contract, and also failed to pay the taxes, as provided, that unless by Monday, December 27th, 1915, you make the payments now past due, and also pay the taxes, we will, in accordance with the rights we have in the above mentioned contract, terminate it, and cancel it, and, as provided in the contract, your payments will be forfeited, and you will cease to have any rights in the property, or any rights whatever."

Not having received any communication from the plaintiffs, the defendant, on December 28th, served upon the plaintiffs the following notice: "Notice is hereby given that the contract between you and The Harbor View Land Company, dated the 1st day of November, 1913, for the purchase and sale of Lot 13, Block 8, Tract 2085, as per map recorded in Book 21, page 168, of Miscellaneous Records Of Los Angeles County, in the office of the County Recorder of said County, as modified by our letter to you dated March 19th, 1915, is hereby rescinded for breach of conditions contained in said contract on your part, to-wit, for failure to make the following particular payments: November 1st., 1915, $20.00; December 1st., 1915, $20.00; one half of 1915–1916 taxes, $9.53........$49.53. Immediate possession of said premises is hereby demanded."

On January 8, 1916, the defendant brought an action in the superior court of Los Angeles County to quiet title as against the plaintiffs to the lot in question. To this complaint the plaintiffs filed an answer and also a cross-complaint. In the cross-complaint they alleged the same matters and also the fraudulent misrepresentations as are in the complaint in this action, to which reference will be made later, and prayed for a judgment for the return to them of the moneys they had paid upon the contract. To this cross-complaint the defendant filed an answer, and the cause came on regularly for trial, whereupon the court excluded, upon objection of the plaintiff therein, all evidence offered in support of the cross-complaint therein, upon the ground, as stated, that the cross-complaint could not be tried in said action. Thereafter, judgment was entered in said action in favor of the plaintiff (defendant herein), quieting plaintiff's title to the property in dispute, and enjoining the defendants from ever asserting any claim thereto.

On February 15, 1916, the plaintiffs in this action served upon the defendant a notice, as follows: ''You will please take notice that we hereby elect to rescind our contract with you, bearing date November 1st, 1913, regarding the purchase of Lot 13, in Block 8, because of the discovery of the falseness of your representations regarding a car line to be built to and from said property, and regarding the construction of the house upon said property. You will also please take notice that we vacated said premises on February 10th, 1916, and possession of the same is hereby surrendered to you. Demand is hereby made on you for the repayment to us of the sum of $780.00 paid by us on this contract, and for the further sum of $500.00 damages for the injury we have suffered as the result of your false and fraudulent representations to us.''

Thereafter, on August 14, 1916, the present action was begun by the plaintiffs against the defendant. The complaint alleges the making of the contract between the parties hereinbefore referred to, and then in detail sets out various alleged fraudulent representations that had been made by the defendant to induce the plaintiffs to enter into said contract. Briefly stated, it was alleged that the property, when they purchased it, was a remote distance from the business center of San Pedro and street-car service, and that its value depended upon car service largely, and that the defendant, as an inducement for them to buy it, stated that eight thousand dollars had already been deposited with the Pacific Electric Railway Company, and that a street-car line would be built near the said property, and the construction thereof would be begun not later than the first day of February following; that a certain reservoir site near the property was to be removed, and a street projected through the land occupied by it; that the house was a new house and cost two thousand five hundred dollars, and was well constructed, and built on a firm and solid foundation. The plaintiffs then allege that all of these allegations were false; that the house was not properly constructed; was not on a good foundation; that neither eight thousand dollars, nor any other sum, had been deposited to obtain an extension of the electric railroad to a point near the property in dispute, etc. The complaint alleged that, subsequent to the making of the said agreement, they had paid, pursuant

to the contract, the sum of $780; that the plaintiffs had rescinded the contract; and asked for a judgment for the return to them of said $780.

The defendant filed an answer, denying the principal allegations of the complaint. Upon the trial thereof, the court found the alleged charges of fraud and misrepresentation to be true; found that the contract had been rescinded by the plaintiffs on February 10, 1916; and, also found that the contract had been rescinded by the defendant on or about January 1, 1916, and that said rescission was concurred in by the plaintiffs, and that the plaintiffs joined in said rescission by giving notice thereof to the defendant within a reasonable time thereafter; and entered judgment in favor of the plaintiffs for the sum of $375, and $26.25 interest, making a total of $401.25, the said amount representing the $780 that had been paid on the contract, less the sum of $405 allowed for twenty-seven months' rental of the premises while occupied by the plaintiffs.

The appellant's main contention on this appeal is that by virtue of the terms of the contract, when it exercised its option to declare the contract ended for default in payments, the money that had theretofore been paid by the plaintiffs to it became its property, and that it is entitled to retain it, unless there has been a rescission of the contract which changed the rights of the parties; and it is its contention that the evidence in the case does not sustain the finding of the court that the contract was rescinded by the defendant on or about January 1, 1916, or that it was rescinded by the plaintiffs February 10th, or at any other time, or that the plaintiffs concurred in any rescission that has been made by the defendant.

[1] After some uncertainty and fluctuation in the opinions, the law is well settled in this state that the vendor in a contract, such as we have before us, upon default of the vendee without legal excuse, is entitled to retain the moneys that have been obtained thereon.

At the outset it is proper to ascertain the nature of the case now before the court, and it may be first stated that it is not an action for damages for fraud and deceit. The complaint is not based upon such a theory of the case.

In *Hines* v. *Brode,* 168 Cal. 507, [143 Pac. 729], it is stated that the rule of damages in an action for deceit

is as follows: ''The measure of damages which a vendee of land is ordinarily entitled to recover is the difference between the actual value of the property and its value had the property been as represented, and the measure of recovery is not affected by the price paid.''

In the complaint in this case there is no allegation of any damages resulting from the alleged fraudulent representations. There is no prayer in the complaint for the damages as representing the difference between these two values, but the complaint asked simply for the return of the money that had been paid on the contract. The findings of the court follow the complaint in this feature, in that there is no finding of the difference between the value of the property as it was and the value of the property as it would have been had the representations alleged to have been made been true, but simply a finding of the amount that had been paid and a judgment for the return thereof, less rental value while used by plaintiffs.

[2] Further, in an action for deceit, where the contract is executory, the plaintiff must allege his ability and willingness to perform the contract. ''Where, under an executory contract, a plaintiff seeks recoupment in damages for deceit while affirming the contract (and it must necessarily be an affirmance if the action be not after rescission) it must be conclusively taken as to such plaintiff that he stands ready and willing to pay the full consideration called for by the contract.'' (*Hines* v. *Brode, supra.*)

There is no allegation in the complaint that the plaintiffs stand ready and willing to pay the consideration mentioned in the contract and no finding of such willingness or ability. The plaintiffs' notice of February 15, 1916, makes it manifest that they had no intention of paying any installment of the purchase price due or to become due.

It not being an action for damages growing out of the alleged fraudulent representations, and the alleged fraudulent representations not being made a basis for the recovery of damages based thereon, it is somewhat difficult to ascertain with accuracy what legitimate place the fraudulent allegations have in the pleadings, or what part they are entitled to play in the final decision of the case. [3] The law is well settled that a party in possession of land on an executory contract to purchase it cannot, while retaining

possession, refuse, because of claim of fraud, to make the payments provided by his contract. The fact, if it be a fact, that the vendor has ·no title to convey, or that the contract was entered into by reason of fraudulent representations of the vendor, furnish no legal justification for neglect or refusal to pay the installments when due so long as possession is retained. (*Los Molinos Land Co.* v. *Mackay*, 175 Cal. 305, [165 Pac. 926]; *Joyce* v. *Shafer*, 97 Cal. 335, [32 Pac. 320]; *Empire Investment Co.* v. *Mort*, 169 Cal. 733, [147 Pac. 960]; *Garvey* v. *Lashells*, 151 Cal. 531, [91 Pac. 498].)

[4] The plaintiffs' case must be considered as one wherein a vendee is seeking, after an alleged rescission of a contract of purchase of real estate, to recover back the moneys paid thereon. And, whether he is entitled to recover or not depends upon whether there has been such rescission.

1. We are of the opinion that the finding of the court that the defendant, on or about January 1, 1916, rescinded the contract of purchase is not sustained by the evidence. It is true that in its notice to the plaintiffs, dated December 28, 1915, it used the word "rescind," but this, in view of the terms of the contract and the previous letters written by it to the plaintiffs, could not be construed as intended to mean a technical rescission, as defined by the provisions of the Civil Code.

It will be observed that the contract between the parties provides that if default is made in the payment the vendor might "rescind" the contract, but in the same connection it provided that if it did so it should retain all moneys that had been paid as rent and liquidated damages. This is entirely inconsistent with the technical rescission defined by the Civil Code.

Again, in the letter of December 21, 1915, it was called to the attention of the plaintiffs as to what would result if their payments were not made, and they were given an extension of time to the 28th to make them, wherein it was stated: "We therefore beg to advise you that, unless by Monday, December 27th, 1915, you make the payments now past due, and also pay the taxes, we will, in accordance with the rights we have in the above mentioned contract, terminate it, and cancel it, and, as provided in the contract, your payments will be forfeited, and you will cease to have any rights in the property, or any rights whatever."

The contract, and these various letters, and the final notice served upon the plaintiffs to vacate the premises, are properly to be construed together in determining the intention of the defendant in its conduct toward the plaintiffs, and it is clear from all these that it did not intend, by its notice of December 28th, to make a technical rescission in accordance with the code provision, and that the notice served upon the plaintiffs was nothing more than a notice in line with the provisions of the contract if they failed to make the payments their rights under the contract would be terminated. There was then no rescission by the defendant on January 1, 1915, and the finding of the court to that effect is not sustained by the evidence.

In *Oursler* v. *Thacher,* 152 Cal. 739, [93 Pac. 1007], it is held: "Upon the default of the vendee, without excuse, to perform the conditions of the bond, the mere service of a notice upon him by the vendor, calling attention to the particulars in which the default consisted and declaring the bond to be forfeited and all the interest of the vendee in the property to be terminated and demanding possession of the property, and the subsequent peaceable taking possession of the property by the vendor and his bringing an action to quiet the title thereto, did not constitute a rescission of the contract by the mutual consent of the parties so as to give the vendee a right of action against the vendor for the recovery of the portion of the purchase price paid under the contract or for disbursements made in the performance of other conditions thereof."

[5] 2. When the defendant had exercised the option given to it by the contract to declare it forfeited and ended for nonpayment of installments due, the money that had been paid by the very terms of the contract became the property of the defendant, and nothing that the plaintiffs could thereafter do, without the consent of the defendant, would have the effect of transferring title to the money from the defendant to the plaintiffs and give them a right of action for its recovery. The attempted rescission by the plaintiffs on February 15, 1916, gave them no right of action for the money. If, before the contract had been ended for nonpayment, the plaintiffs had surrendered possession of the premises and rescinded the contract, they would have had a right of recovery upon proving fraudu-

lent representations sufficient to justify such rescission. But the decisions all hold that, after default without legal excuse, no recovery can be had for moneys paid, unless there is a mutual rescission.

In *List* v. *Moore,* 20 Cal. App. 622, [129 Pac. 964], the decisions are reviewed at some length and it is there said: "But there could seem to be no controversy as to what are the controlling principles of law in view of the decision in the Glock case (123 Cal. 1, [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713]). Therein, it is clearly held that 'under a contract for the sale of real estate, in which time is made the essence of the contract and performance by the purchaser is made a condition precedent to a conveyance, and upon his breach of the contract he is declared to forfeit all rights thereunder; and all moneys paid thereon, the purchaser cannot, after his default without excuse shown therefor, by a tender of the amount due, acquire either an equitable or legal right to maintain an action to recover back the moneys paid under the contract.' Furthermore, where time is expressly made of the essence of the contract for the purchase of land, equity will not ignore such provision but follows the law and will neither make a contract for the parties, nor violate that which they have entered into; nor will it relieve a purchaser who has made unexcused default under such a provision, and has not fulfilled conditions precedent to the vesting of his right of action. It is declared also that the right of the vendor to retain the part of the purchase price paid after the default of the vendee is independent of any express clause in the contract for forfeiture of rights or for retention of the purchase money as liquidated damages, that such clauses are merely declarations in express terms of the legal rights of the parties under such a contract without them and that the validity of such express clause is immaterial. It is furthermore held that in such case it is only when the vendor, after default of the vendee, agrees to a mutual abandonment and rescission that the vendee is entitled to receive the purchase money paid."

And in the recent case of *Russell* v. *Hawxhurst,* 44 Cal. App. 703, [187 Pac. 146], it is said: "It is now the settled law of this state that a vendee under a contract for the purchase of real property cannot continue to hold the possession

thereof after making default in the payments therein provided, regardless of whether the vendor has title or not, and that the vendee cannot refrain from making payments as by the contract provided, and also continue to hold possession of the land; nor can the vendee under any circumstances, be entitled to the return of the money by him theretofore paid thereunder while he continues to hold possession of the land; nor can the vendee after making default in his payments without legal excuse ever recover the return of any of the money he may have paid thereon when the vendor was not in default of anything on his part to be kept and performed, except when there has been mutual rescission. (*Glock* v. *Howard,* 123 Cal. 10, [69 Am. St. Rep. 17, 43 L. R. A. 199, 155 Pac. 713]; *Haile* v. *Smith,* 128 Cal. 419, [60 Pac. 1032]; *Bruschi* v. *Quail Mining Co.,* 147 Cal. 120, 123, [81 Pac. 404]; *Garvey* v. *Lashells,* 151 Cal. 526, 531, [91 Pac. 498]; *Oursler* v. *Thacher,* 152 Cal. 739, 745, [93 Pac. 1007]; *Gervaise* v. *Brookins,* 156 Cal. 103, 108, [103 Pac. 329]; *List* v. *Moore,* 20 Cal. App. 616, [129 Pac. 962]; *Skookum Oil Co.* v. *Thomas,* 162 Cal. 539, ]123 Pac. 363]; *Champion Min. Co.* v. *Champion Mines,* 164 Cal. 205, 213, [128 Pac. 315].)''

The fraud alleged not being a legal excuse for the nonpayment of the installments so long as plaintiffs held possession of the property, and such fraud being the only excuse suggested for such nonpayment, it follows that when the defendant declared the contract ended, the plaintiffs were in default without legal excuse and no recovery could thereafter be had without a mutual rescission of the contract. As no such rescission took place, it necessarily follows that the plaintiffs are not entitled to recover.

The judgment is reversed.

Hart, J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 13, 1920.