[Civ. No. 3946.   First Appellate District, Division One.—December 16, 1921.]

SPRING ESTATE COMPANY (a Corporation), Respondent, v. CHARLES A. COHEN, Appellant.

[1] VENDOR AND VENDEE—ACCEPTANCE OF OVERDUE PAYMENTS—TEMPORARY SUSPENSION OF RIGHT OF FORFEITURE.—When time is of the essence of a contract of sale requiring periodical payments the acceptance of payments after their due date creates a temporary suspension of the right of forfeiture arising upon such delay, which can only be restored by giving definite notice of the creditor's intention thereafter to require strict compliance with the terms of the contract.

[2] ID.—SUBSTITUTION OF NEW CONTRACTS—INAPPLICABILITY OF DOCTRINE.—Where such a contract of sale is canceled by mutual agreement and new contracts substituted therefor and no payments are either tendered or accepted under the latter, the acceptance of overdue payments under the first contract cannot affect the respective rights and obligations of the parties under the new agreements.

APPEAL from a judgment of the Superior Court of Alameda County. A. F. St. Sure, Judge. Affirmed.

The facts are stated in the opinion of the court.

Raymond Perry for Appellant.

Redmond C. Staats and George L. Hughes for Respondent.

KERRIGAN, J.—This is an appeal from a judgment in favor of the plaintiff and cross-defendant and against the defendant and cross-complainant, by which the rights of the latter in three several agreements to purchase real property were declared to be forfeited, and quieting the plaintiff's title thereto.

On July 1, 1912, plaintiff's predecessor in interest sold to defendant and defendant agreed to buy three lots of land in a suburban subdivision named Thousand Oaks, situated in the county of Alameda, for $6,500, payable in installments. During the years 1912 and 1913 defendant paid on account of said purchase the sum of $1,170, this sum being the

aggregate of several installments, many, if not practically all, of which were paid after their due date and were accepted by the vendor. On July 1, 1914, the parties entered into a new arrangement, under the terms of which a separate contract was executed for each of said three lots, and the aforesaid sum of $1,170 paid on account of the contract of July, 1, 1912, was divided and applied about equally as a credit upon these several new contracts. Thereafter no further payments were made, and on August 26, 1919, the plaintiff in writing notified defendant of his default, and that unless he complied with the terms and conditions of the contracts on or before September 5, 1919, plaintiff would take such steps as it deemed necessary to protect its interests. Defendant made no reply to this letter, and on September 5, 1919, plaintiff notified defendant that it elected to stand on the terms of the contracts, to retain to its own use the amounts paid by defendant on account thereof, and to treat defendant's rights thereunder as terminated.

The contracts provided that if the purchaser should be in default in any of the payments provided to be made under the contracts for the period of sixty days the purchaser should forfeit all rights thereunder, and all payments theretofore made should be regarded as liquidated damages, to be retained as such by the vendor, and that the latter was entitled at once upon demand and without further notice to the possession of said lots. The contracts also provided that a notification to that effect in a registered letter from the vendor to the purchaser, mailed to the address given in the contracts, should constitute legal notice of the forfeiture. Time was expressly made of the essence of the contracts. .

[1] If this were an action on the contract of July 1, 1912, there would be room for the application of the doctrine that when time is of the essence of a contract requiring periodical payments the acceptance of payments after their due date creates a temporary suspension of the right of forfeiture arising upon such delay, which can only be restored by giving definite notice of the creditor's intention thereafter to require strict compliance with the terms of the contract. [2] But the contract of July 1, 1912, had been canceled by mutual agreement, and for it there had been substituted three several written agreements, one relating to each lot. On these no payments had been either

tendered or accepted; and we think it cannot be held that the acceptance of delayed payments under the first contract can affect the respective rights and obligations of the parties under the new agreements. Under these there must be on the part of the vendor a new waiver of strict compliance with the terms of payment; in the absence of which it was entitled to enforce the right reserved in the agreements to declare a forfeiture upon the defendant's noncompliance with their terms regarding payment. (*Los Molinos Land Co.* v. *Mackay,* 175 Cal. 305 [165 Pac. 926]; *Hyman* v. *Harbor View Land Co.,* 46 Cal. App. 98 [188 Pac. 828].)

It is true, as claimed by defendant, that the plaintiff paid taxes on the lots each year as they became due, charging them to the defendant upon its books; but these payments certainly cannot be regarded as made for the benefit of the defendant and to bring about the suspension of the forfeiture clause of the contracts.

Judgment affirmed.

Tyler, P. J., and Knight, J., *pro tem.,* concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 14, 1922.

All the Justices concurred.

Lennon, J., was absent and Richards, J., *pro tem.,* was acting.