[L. A. No. 1955.  Department One.—January 24, 1908.]

A. R. OURSLER et al., Respondents, v. P. THACHER et al., Appellants.

VENDOR AND VENDEE—DEFAULT BY VENDEE—FORFEITURE BY VENDOR—RESCISSION OF CONTRACT.—Under a bond for the sale of a mine, which required the payment by the vendee of the purchase price in installments at stated intervals, and the performance by him of other specified conditions, and provided that in case of default in the payment of any installment the bond should immediately be forfeited and become null and void, and the sums paid treated as rental of the property for the period covered thereby, and that a

breach of any condition by the vendee would release the vendor from the obligation of the bond, the vendor had the right, without abandoning or rescinding the contract, to insist that by the terms thereof, the vendee by reason of his default had no further right thereunder.

ID.—ACTS NOT AMOUNTING TO RESCISSION—DEMAND OF FORFEITURE—QUIETING TITLE—RECOVERY OF PURCHASE PRICE.—Upon the default of the vendee, without excuse, to perform the conditions of the bond, the mere service of a notice on him by the vendor, calling his attention to the particulars in which the default consisted, and declaring the bond to be forfeited and all the interest of the vendee in the property to be terminated, and demanding possession of the property, and the subsequent peaceable taking possession of the property by the vendor, and his bringing an action to quiet his title thereto, did not constitute a rescission of the contract by the mutual consent of the parties, so as to give the vendee a right of action against the vendor for the recovery of the portion of the purchase price paid under the contract or for disbursements made in the performance of other conditions thereof.

APPEAL from a judgment of the superior court of San Bernardino County. Benjamin F. Bledsoe, Judge.

The facts are stated in the opinion of the court.

D. P. Hatch and I. H. Preston, for Appellants.

The agreed facts showed a rescission of the contract. (*Bannister* v. *Read*, 1 Gilm. 99; *Carney* v. *Newberry*, 24 Ill. 203; *Kirby* v. *Harrison*, 2 Ohio St. 326, 59 Am. Dec. 683; *Higby* v. *Whittaker*, 8 Ohio, 201; *Hairston* v. *Jaudon*, 42 Miss. 380; *Clay* v. *Hart*, 49 Tex. 433, 21 Am. & Eng. Ency. of Law, 1 ed., p. 68; *Gurn* v. *Calegaris*, 139 Cal. 390, 73 Pac. 851; 1 Pomeroy's Eq. Jur., sec. 110; *Moore* v. *Rogers*, 19 Ill. 347; *Howard* v. *Hunt*, 57 N. H. 467; *Skillman Hardware Mfg. Co.* v. *Davis*, 53 N. J. L. 144, 20 Atl. 1080; *Thompson* v. *Fuller*, 16 N. Y. Supp. 486, 41 N. Y. St. Rep. 224; *Drew* v. *Pedlar*, 87 Cal. 443, 22 Am. St. Rep. 257, 25 Pac. 749; *Keller* v. *Lewis*, 53 Cal. 113, 198; *Fairchild* v. *Mueller*, 90 Cal. 190, 27 Pac. 201.)

Anderson & Anderson, for Respondents.

ANGELLOTTI, J.—This is an action to quiet title of plaintiffs to certain mining claims, the complaint being in the ordinary form. The defendants in their answer denied the

ownership of plaintiffs on information and belief, but did not set up any claim of title or right in the property in themselves. By cross-complaint, the defendant Marshpee Mining Company sought to recover from plaintiffs money paid as part of the purchase price of said claims under a contract for the sale thereof by plaintiffs to certain of the defendants, and also money expended by it in developing such claims while in possession thereof under said contract. The cause was submitted to the trial court for decision upon an agreed statement of facts, and judgment was given quieting plaintiffs' title to the claims, and denying defendant mining company any relief on its cross-complaint. This is an appeal by defendants from such judgment.

The facts agreed to, so far as material, are as follows: Plaintiffs were on November 14, 1904, and ever since have been, the owners of the mining claims. On said November 14th they executed a bond for a deed thereof to defendants Thacher and Blewett. This bond was for the execution and delivery by plaintiffs to said defendants or their assigns, on or before the fifth day of December, 1905, of a deed for the claims, provided that said defendants or their assigns, on or before that date, paid to plaintiffs the agreed purchase price of one hundred thousand dollars, and performed the other conditions specified therein. The other conditions so specified were that the purchasers would pay to plaintiffs on or before December 5, 1904, the sum of five hundred dollars, and the sum of five hundred dollars per month thereafter during the continuance of the bond, said payments to be credited on the purchase price in the event of consummation of the purchase in accord with the terms of the bond, and that the purchasers would begin development work on or before December 27, 1904, and prosecute the same continuously until said consummation of the purchase or the cancellation of the bond, the net proceeds of the ore taken out in said work to be divided equally between the parties, but in the event of said consummation of the purchase the portion paid to plaintiffs to be credited on the purchase price. It was expressly provided that in case of default in the payment of any five-hundred-dollar monthly installment, "this bond shall immediately upon such default be forfeited and become null and void," and the sums paid treated as rental of the property for the period

covered thereby, and that a breach of any condition by the purchasers would release the plaintiffs from the obligation of the bond. The defendant mining company succeeded to the rights of the vendees and went into possession of the claims under the bond. It paid to plaintiffs and plaintiffs accepted eight monthly installments of five hundred dollars each, the last installment being that for July, 1905. It also paid on January 24, 1905, $42.50, and on April 6, 1905, $365.27, proceeds of sales of ore. It also expended in developing said claims the sum of $9846.40. (These are the amounts sought here to be recovered by defendants.) On August 5, 1905, a monthly installment became due and payable. Demand that the same be paid was forthwith made, and on request of defendants the time for such payment was extended several times, the last extension being to August 18, 1905, at ten o'clock A. M. At that time, demand for immediate payment was again made, and defendants failed and have ever since failed to pay the same or any part thereof. On August 21, 1905, plaintiffs served on Thacher, Blewett, and the mining company a written notice in the following terms:

"To

"Messrs. P. Thacher, W. G. Blewett and The Marshpee Mining Company.

"Gentlemen:

"You are hereby notified that the terms of the bond from A. R. Oursler and Clemente Salazar, as parties of the first part, to P. Thacher and W. G. Blewett, as parties of the second part, dated November 14, 1904, and bonding all of that certain property hereinafter more particularly described, have been violated, and that the parties thereto have failed to comply with, and keep certain of its terms and conditions, in this:

"First. The said parties of the second part in said bond have failed and neglected to do the development work upon said mining properties as therein provided.

"Second. That the said parties of the second part in said bond have failed and neglected to make the monthly payments therein provided and particularly have failed and neglected to make the monthly payments of five hundred dollars due thereunder on the fifth day of August, 1905, and the said monthly payment of five hundred dollars still remains unpaid . . .

"Wherefore, we, the undersigned, A. R. Oursler and Clemente Salazar, parties of the first part in said bond, do hereby declare said bond to be forfeited and all of your interest in the property therein and hereinafter described to be terminated, and we hereby demand of you that you forthwith vacate said property and deliver the possession of the same to us; and that you leave upon said property all of the improvements, machinery and fixtures which are now thereon and which, under the terms of said bond and agreement, indorsed upon said bond supplementary thereto, belong to and are the property of the undersigned. . . .

"Yours very truly,

"A. R. OURSLER,

"CLEMENTE SALAZAR."

On August 28, 1905, possession of the property not having been delivered, plaintiffs' attorneys communicated by letter with said defendants, referring to the previous notice, and advising them that unless the property was delivered by 12 M. of August 30th, suit would be commenced for the possession of the property. Thereafter, plaintiffs peaceably took possession of the property, and then brought this action to quiet their title. At the time of the service of the notice, defendants had failed to live up to the obligations of the bond in the matter of doing development work, and did no such work after the service of the notice.

There was no attempt by defendants in their pleadings to show any excuse for the failure to comply with the conditions of the bond. The theory of defendant mining company's claim for reimbursement of the amounts paid to plaintiffs under the contract and in doing the development work, is that the contract for the sale of the property had been rescinded by mutual consent of the parties, and that because of such mutual rescission the mining company was entitled under our decisions to recover the money which it had paid in part performance of the contract.

We see nothing in the admitted facts warranting a conclusion that there was a rescission of the contract within the meaning of the decisions relied on. Plaintiffs had the right without abandoning or rescinding the contract to insist that by the terms thereof defendants, by reason of their default,

had no further right thereunder. This is clearly established by the decision of this court in *Glock* v. *Howard etc. Co.,* 123 Cal. 1, [69 Am. St. Rep. 17, 55 Pac. 713]. That was a case where the vendee after default in the payment of amounts due under the contract, and after the time when, under its terms, he was entitled to pay and thereupon receive a deed, tendered all sums due and demanded a deed, and, on refusal of the vendor to accept the tender and execute the deed, brought an action for the recovery of the sums paid by him under the contract. No excuse was made by the vendee for the default. The court in bank held that this refusal of the vendor did not constitute a rescission. Justice Henshaw, in an opinion concurred in by Justices McFarland and Temple, said: "But, while it is essentially true that in case of a rescission the vendee may demand that he be restored to his original condition, it does not follow that a vendor who refuses to convey after such breach by the vendee thereby rescinds. To the contrary, in refusing to convey after the vendee's default he is not treating the contract as at an end, but is expressly standing upon it, and basing his rights upon its terms, covenants, and conditions." Also: "But the vendor, in refusing to accept the tender and to repay the money, is neither violating his contract nor rescinding it, nor treating it as at an end. He is standing squarely upon its terms." Justice Harrison, in an opinion concurred in by Justices Garoutte and Van Fleet, after fully recognizing the doctrine that in the event of a rescission or mutual abandonment the vendee might recover money paid in part performance, said: "But it has never been held that while the contract was insisted upon by the vendor, and he had done no act by which it might be contended that he had abandoned the contract, or was in any respect in default, the vendee could recover the money paid by him in part performance of the contract. . . . The plaintiff could not maintain an action against the defendant to recover the money paid by him, unless there had been a breach of the contract by the defendant, and the defendant was not guilty of a breach of its obligation by failing to execute the conveyance, when the plaintiff was himself in default, or by refusing to comply with the demand of the plaintiff made many months after he had lost his right to the enforcement of the contract." The

earlier decisions relied on by counsel for defendants were
carefully examined by this court in that case because of the
apparent misunderstanding as to their effect, and were fully
explained in the opinion, and there is nothing in any later
case that is inconsistent with the views of the court on this
matter as expressed in such opinion. The stipulated facts
here warrant no inference but the one that plaintiffs have
done no more than to insist that *under the terms of the con-
tract* defendants had no further rights under such contract,
but had forfeited all such rights. Their notice of forfeiture
and demand for possession of the mining property were
strictly in line with this claim, and were in no sense a repu-
diation or abandonment of the contract or a consent to a
rescission thereof, any more than was the refusal of the vendor
to convey in *Glock* v. *Howard,* 123 Cal. 1, [69 Am. St. Rep. 17,
55 Pac. 713], an abandonment or a consent to a rescission.
The bringing of the action to quiet title was an act of the
same character. Practically, it amounted to no more than
the calling of the defaulting vendees into court to show why
it should not be decreed that under the terms of the contract
all their rights thereunder were at an end. In the absence
of some sufficient equitable showing to excuse their failure
to comply with the terms of the contract, plaintiffs, while
standing on their contract, were entitled to such a decree, so
as to cut off the possibility of any future claim by the vendee
to equitable relief, which might embarrass or cloud his title.
(*Glock* v. *Howard,* 123 Cal. 10, 11, [69 Am. St. Rep. 17, 55
Pac. 713].)

There being no rescission or abandonment of the contract
by the plaintiffs, and the plaintiffs at all times having insisted
on the contract and stood on its terms, and being in no respect
in default, the vendees in default were not entitled to recover
either the moneys paid by them to plaintiffs or the moneys
expended in developing the property.

Other points are made by counsel for plaintiffs in support
of the judgment, including one to the effect that the matters
alleged in the cross-complaint do not come within the scope
of matters as to which a cross-complaint is authorized by our
statute in an action to quiet title. (Code Civ. Proc., sec. 442.)
We have preferred to place our decision in the case upon the
ground already set forth, but in so doing we do not desire

to be understood as holding that this claim of plaintiffs is without merit.

The judgment is affirmed.

Shaw, J., and Sloss, J., concurred.