Thelma Mae KING, Surviving wife of L. K. King, W. T. Brockus and Wilma Ruth Brockus, Plaintiffs in Error,

v.

W. R. OAKLEY and Marie Oakley, Defendants in Error.

No. 41528.

Supreme Court of Oklahoma.

Oct. 10, 1967.

As Corrected Oct. 17, 1967.

Rehearing Denied Dec. 12, 1967.

O. O. Leach, Tulsa, for plaintiffs in error.

Brown & Garrison, by Vernon A. Brown, Tulsa, for defendants in error.

DAVISON, Justice.

This is an appeal by Thelma Mae King, W. T. Brockus and Wilma Ruth Brockus, his wife (defendants below), from a judgment in favor of W. R. Oakley and Marie Oakley, his wife (plaintiffs below), whereby the title to certain real estate was quieted in plaintiffs. The judgment denied defendants' contention that plaintiffs' action was to rescind a real estate purchase contract between plaintiffs and defendants and the use of such remedy required plaintiffs to restore to W. T. Brockus the amount he had paid to plaintiffs as a down payment on the purchase price.

On January 18, 1963, the plaintiffs entered into a written contract to sell the East Half of the Southeast Quarter of Section 27, Township 22 North, Range 13 East of I. M., in Tulsa County, less one-half the minerals, to the defendants and L. K. King, the now deceased husband of Thelma Mae King, for $18,308, payable $4500 in cash, and $6908 on January 1, 1964, and by assuming and paying an existing $6900 mortgage on the property. The contract further provided for immediate delivery of possession to the purchasers, subject to 90 days free pasturage for plaintiffs' livestock and the right of the then tenant of a part of the land to harvest an existing oat crop. It was agreed therein that, upon payment of the above sums, the plaintiffs would furnish an abstract of title and deliver a warranty deed to the purchasers. The provisions of the contract relative to default were as follows:

"11. Any failure on the part of the Second Parties to faithfully keep and perform all of the above covenants and agreements or to make any payments in the time and manner above specified, shall render this contract void at the option of the First Parties, and said First Parties shall retain all payments theretofore made as agreed rental and liquidated damages and shall have and recover immediate possession of the said premises and the Second Parties agree that they will thereupon peacefully deliver the same. Second Parties further agree upon said default to execute such releases or quit-claim deeds as shall be necessary to eliminate any clouds cast by this transaction or contract, upon the title of the First Parties."

The $4500 down payment was paid by W. T. Brockus, and possession of the property was delivered subject to the reserved rights of the plaintiffs. W. T. Brockus and his wife were nonresidents of the State of Oklahoma and, as to the purchasers, L. K. King was the moving or active party in the transaction. L. K. King died January 25, 1963. The purchase agreement was filed of record and on July 19, 1963, W. T. Brockus and his wife filed a lien upon the property in the office of the court clerk for the $4500 that was paid by W. T. Brockus to plaintiffs as the down payment on the property.

On or shortly before the payment of $6908 became due on January 1, 1964, the plaintiffs tendered to defendants an abstract of title certified to date and a warranty deed conveying the property to the buyers and requested payment of the balance of the purchase price. There is no

dispute about this and the further fact that defendants did not pay the balance due on the contract. The plaintiffs requested that a quit claim deed be given them, as provided in the contract, and the defendants refused to comply with the request.

On or about January 13, 1964, the plaintiffs delivered to the defendants and the heirs of L. K. King a "Notice of Rescission of Contract" in which it was stated that plaintiffs elected "to rescind said contract and the same is hereby rescinded and declared void" because of failure to pay the $6908 due January 1, 1964, failure to pay the 1963 taxes, and failure to pay the pre-existing mortgage of $6900 on the property. The notice further stated:

"You and each of you shall please take notice that all of the earnest money paid herein, by the above named parties, shall be retained by the said W. R. Oakley and Marie Oakley, as rental and liquidated damages, pursuant to the terms and conditions of said paragraph 'Eleven' of said contract."

Thereafter, on July 28, 1964, plaintiffs filed the present action against the defendants, the known and unknown heirs of L. K. King, and the administrator of his estate, to quiet title to the property in plaintiffs. The petition alleged the above described contract for purchase of the property; delivery of the abstract and tender of the warranty deed pursuant to the terms of the contract; plaintiffs' demand for a quit claim deed and refusal of all parties defendant to deliver such conveyance to plaintiffs; that the purchasers had wholly refused and neglected to perform their part of the contract by reason of their failure to pay the sums above enumerated and refusal to deliver a quit claim deed of the property to the plaintiffs; and that all parties defendant claimed some right, title and interest in and to the property, but that all of said claims were wholly without merit, spurious and void, and constituted a cloud upon plaintiffs' title, which should be removed by a decree of the court. The petition further alleged that the defend-

fendants W. T. Brockus and Wilma Ruth Brockus had on July 19, 1963, filed a lien in the office of the District Court Clerk, labeled "Mechanic's Lien," but that their claim of some right, title and interest in the property by virtue of such instrument was without merit, spurious and void. Plaintiffs prayed that their title be quieted against all parties defendant and that the cloud cast upon the title by the void claims be removed by a decree of the court.

The answer of the defendants, Thelma Mae King, W. T. Brockus and Wilma Ruth Brockus, to the extent pertinent, admitted the purchase contract and tender of the warranty deed by plaintiffs; admitted defendants failed to make the payments specified in the contract, and alleged the death of L. K. King rendered them financially unable to make such payments; admitted plaintiffs solicited and requested quit claim deeds from defendants; alleged W. R. Brockus paid the $4500 down payment and plaintiffs had not tendered such money, nor any part thereof, to W. T. Brockus, and that the retention of such sum by plaintiffs as "rental and liquidated damages" was in fact a penalty for non-performance of the contract and was forbidden by law; that plaintiffs at all times had the possession and use of the property and none of the defendants had ever had possession; and that plaintiffs' action invoked the equity powers of the court to rescind and declare void a contract and at the same time sought to enforce an unlawful penalty, all as set out and demonstrated by their "Notice of Rescission Contract". (supra). Defendants prayed that the court require plaintiffs to return to W. T. Brockus the $4500 earnest money less the damages suffered by plaintiffs and for general relief.

The answer of the defendant administrator of the Estate of L. K. King, Deceased, alleged the deceased "owned an option to purchase" the real estate and prayed the estate be awarded the fair and equitable value of the option.

Plaintiffs' reply to the answer of Mrs. King and Brockus and wife was a general denial and an admission of the execution of the contract and of the tender of the warranty deed.

The evidence presented at the trial disclosed no material conflict as to the matters heretofore narrated and the factual allegations of the petition and answer. Mrs. King testified she did not live in the house on the property and had only spent a few hours there on about six occasions. Mr. Oakley stated he continued in possession during 1963 by agreement with Mrs. King whereby he paid the 1963 taxes for that privilege. We conclude from the evidence and the allegation in defendants' answer that plaintiffs remained in possession of the farm. During the trial the attorney for defendants stated that the lien filed by Brockus and his wife in the office of the court clerk was a "purchase money lien," and defendants also admitted the plaintiffs were ready, willing and able to comply with the contract and did tender to defendants a correct warranty deed and that defendants breached the contract.

The lower court rendered judgment quieting title in plaintiffs against the claims of all defendants and denied defendants' prayer for return to W. T. Brockus of the $4500 earnest money paid by him when the purchase contract was executed. The court found that plaintiffs were at all times willing and able to comply with the contract; that defendant purchasers breached the contract; and that plaintiffs demanded a quit claim deed to remove the clouds cast upon the real estate title by the contract with the defendants, but that defendants, contrary to the express terms of the contract requiring them to give such deeds, refused to deliver quit claim deeds to the plaintiffs. The trial judge stated that plaintiffs' action was to quiet title and was not an action to rescind the contract.

Defendants urge for reversal of the judgment the proposition that an action by vendors (plaintiffs) to quiet title and bar defaulting vendees (defendants) under a contract for sale of land from claiming any title or interest in the premises, is an equity action for rescission of the contract, and vendors must show restoration or offer of restoration of benefits received by them under the contract.

One element of this contention concerns the interpretation and effect, if any, to be given to the "Notice of Rescission of Contract" plaintiffs delivered to defendants on January 13, 1964. This notice recited that plaintiffs elected to rescind and declare the purchase contract void because of defendants' default. However, in the quoted portion thereof, supra, plaintiffs stated they would retain all of the earnest money paid on the contract. This announced intention to retain the down payment was in conflict with the strict legal meaning of "rescission" and the obligation of the party rescinding.

We have held that "rescission" requires restoration of status quo and means to restore the parties to their former position. F. & M. Drilling Co. v. M. & T. Oil Co., 192 Okl. 372, 137 P.2d 575, 577. Our statute 15 O.S.1961, § 235, provides in part that the party rescinding must restore to the other party everything of value which he has received from him under the contract, or must offer to restore the same.

In 77 C.J.S. p. 276, it is stated that the word "rescind" cannot be wrenched from its context and construed alone in its unqualified, strict, and technical sense, in disregard of the surrounding circumstances, and that the word is often, and not improperly, used to mean cutting off, and leaving the parties in the exact conditions then existing. See Lea v. Young, 168 Wash. 496, 12 P.2d 601.

In view of the obvious conflict in the language of the notice it is our opinion the notice expresses an intent to terminate the contract and not a rescission thereof in the legal sense. Our conclusion is supported by the fact that plaintiffs later elected to use the remedy of quieting title

and filed the present suit to quiet title against the claims of the defendants under the contract with no allegations of rescission and containing no offer to restore to them, or to W. T. Brockus, the down payment. Plaintiffs' rights and obligations will be determined in accord with the remedy they have now elected to pursue.

This brings us to a direct determination of the merit of defendants' proposition that plaintiffs' action to quiet title was one for rescission of the contract requiring restoration, or an offer of restoration, to W. T. Brockus of the down payment received by plaintiffs.

■ In Sparks v. Trosper, 186 Okl. 289, 97 P.2d 81, 82, we stated:

"The remedy which the vendor in an executory contract for sale of real estate may elect for default by the vendee depends largely upon the terms of the contract and the circumstances of the case. The rights of the parties will depend upon the rules governing the remedy elected and the issues made by the pleadings."

In the Sparks case the vendor filed an ejectment action against the defaulting vendee. The trial court entered judgment for vendor and quieted his title. We affirmed the judgment, stating that the vendor had selected a remedy at law and, title and right of possession being the only issues involved, the vendor was not required to restore what he had received under the contract. We further stated, citing 66 C.J. p. 1206 (now 92 C.J.S. Vendor and Purchaser § 375), that a vendor may elect one of several remedies, and it was necessary to always keep clearly in mind the nature of the remedy invoked, whether the action or defense involves legal or equitable questions, the peculiar facts in each case, and the terms of the contract under consideration.

In 92 C.J.S. Vendor and Purchaser § 375, there is an enumeration of the remedies available to the vendor on breach of the contract by vendee, including actions for rescission and to quiet title.

■ There is no dispute that an action to quiet title is one of equitable cognizance. Defendants conclude and argue that the action is a repudiation of the contract and is for rescission. We have heretofore narrated the plaintiffs' petition. It alleges the purchase contract and the plaintiffs' offer to perform the contract by delivering the abstract and tendering a deed to defendants. It alleges defendants' breach of the contract by failing to pay the full purchase price and refusing to give quit claim deeds to clear plaintiffs' title of the contract and the lien filed by Brockus and his wife. It prays that the title be quieted against the claim of the defendants. Defendants' answer and evidence raised no issue and admitted all allegations of the petition. The petition has no allegations of repudiation or rescission of the contract or which may be construed to that effect. To the contrary, the petition reflects that in fact the plaintiffs were relying upon the contract and the admitted breach thereof by the defendants, in failing to make the payments and give the quit claim deeds, to establish that defendants had no further rights under the contract.

■ The action was not one brought for avoidance of the contract itself in the form of equitable relief against it by cancellation and rescission of its terms. The object of the petition was to secure the removal of a cloud on plaintiffs' title on the ground that the contract was no longer in force and effect under its own terms. In this situation the question is not whether the plaintiffs have sufficiently done equity, by returning the down payment to permit them to obtain equitable relief in the form of a rescission of their contract, but whether or not defendant vendees have any rights left in effect under the contract which should be permitted to stand as a present cloud or which might in the future embarrass or cloud the title.

Our conclusions with regard to plaintiffs' quiet title action and the allegations of their petition are sustained by the decisions in Catterline v. Peterson, 60 Cal.

App. 617, 213 P. 515; Coe v. Bennett, 46 Idaho 62, 266 P. 413; United Farmers' City Market v. Donofrio, 43 Ariz. 35, 29 P.2d 144; Lawrence v. Demos, 70 Wyo. 56, 244 P.2d 793; and Pierce & Stevenson v. Jones, 109 Fla. 517, 147 So. 842, 88 A.L.R. 192.

▆▆▆ Rescission is necessarily a voluntary act. Kershaw v. Hurtt, 66 Okl. 117, 168 P. 202. When we consider that in the present circumstances the defendants admit all of the allegations of the petition, including their breach of the contract by failing to pay the purchase money and refusing to deliver the quit claim deeds, we reach the inescapable conclusion that the failure to perform the terms of the contract was entirely the fault of the defendants. Plaintiffs were faced with necessity and were in fact forced to take some legal action to terminate the contract and clear their title record. It is clear the defendants could not by their failure to perform the contract force the plaintiffs to adopt rescission with the legal consequences of such remedy. The contract did not so provide and plaintiffs had a choice of remedies. Plaintiffs elected to quiet title without rescission. Under the state of the pleadings the only matter remaining in the action for determination was the issue presented by the defendants' pleading and prayer for affirmative relief, that plaintiffs be required to pay back the down payment. For all practical purposes the defendants had the status of a plaintiff vendee seeking to recover from the vendor the down payment on an executory contract for the sale and purchase of lands.

In this state of affairs the present situation is similar in some respects to that presented in the case of Kershaw v. Hurtt, supra, in which the vendee sued the vendor to cancel the contract and recover the down payment on the ground of fraud by the vendor. The vendor's answer alleged, that at all times he was able and willing to carry out the contract, and that pursuant to the terms of the contract he elected to exercise his option to declare the contract null and void and all sums paid him forfeited and subject to be retained by him as liquidated damages because of vendee's failure to pay an installment of the purchase price. The trial court rendered judgment for the vendee on the theory that vendor's answer, electing to terminate the contract, amounted to a rescission on his part which authorized the vendee to recover. On appeal it was held that the vendee's evidence did not establish fraud on the part of the vendor, and vendee was not entitled to recover the money paid unless vendor's answer could be considered such a rescission on his part as would entitle the vendee to recover. The decision held the answer could hardly be called a rescission, and that after vendee's default and repudiation of the contract the vendor elected to terminate the contract and retain what he had received. It further stated the vendor's pleading was *wholly unnecessary*, for *without invoking the particular provision* of the contract, which appeared to authorize such a course, he was entitled, in the absence of any proven fraud, to retain the down payment. The decision states:

"* * * It is well settled by this court and other courts of the highest standing that the vendee in an executory contract for the purchase of lands, who, after paying part of the consideration under such contract, makes default and refuses to carry out the further terms agreed upon, cannot maintain an action to recover any of the consideration advanced. * * *"

See Diehl v. Welsh, Okl., 393 P.2d 834, for a more full and definite statement of the above quoted rule of law.

Defendants cite Nicholson v. Roberts, 144 Okl. 116, 289 P. 331, to support their contention that plaintiffs' action was for rescission. In that case the purchase contract provided that default would cause a forfeiture of the contract and all previous payments and the contract "thereupon shall be void." Vendors' petition alleged vendees had possession and had defaulted and, un-

der the terms of the contract, the rights of vendees "became forfeited and said contract void;" that by reason of the default the contract became "null and void;" and vendors were entitled to have the contract decreed to be "of no force, virtue or effect." Vendors prayed for a decree that they were the owners of the property and vendees had no right, title or interest therein, for possession, "and decreeing said contract to be null and void." Vendees alleged the action was for rescission of the contract and vendors were obligated to return or offer to return, the consideration received. The trial court found the action was one in ejectment; that there was no mutual rescission; and that vendors were entitled to possession and to cancellation of the contract. The judgment quieted title in vendors, awarded them possession, and denied vendees any affirmative relief. On appeal to this court the judgment was reversed. The decision held the petition primarily sought cancellation of the contract, and must be classified as an action in rescission, and the judgment rendered thereon (quieting title) was tantamount to a decree of cancellation of the contract with possession of the property following as a mere incident. The decision states as follows:

"* * * The term 'cancellation,' in the sense of its use in the petition is synonymous with that of rescission for the accomplishment of either the one or the other would result in a revocation, by reason whereof it was incumbent upon plaintiffs to allege a restoration or an offer of restoration to defendants of everything of value they (the plaintiffs) had received from them under the terms of the contract. * * *"

Our detailed statement of the cited case reflects there is no conflict between that decision and our conclusions, supra, in the present case. In the cited case the contract provided it would be void on default and the petition alleged and did pray for a judgment decreeing the contract null and void, and the trial court found it should be can-

celed. The judgment quieting title was based on the cancellation, and the decision concluded the judgment was "tantamount to a decree of cancellation of the contract." In the present case the plaintiffs relied on the contractual provision requiring defendants to give quit claim deeds to clear the title and asked that the title be cleared of record from the claims of the defendants.

Defendants also cite Stone v. Ritzinger, 194 Okl. 653, 153 P.2d 1006. In that case the contract provided that upon default the vendor had the option to declare the contract void. Vendor's petition alleged he was entitled to have the contract "canceled" and prayed for a decree enjoining the vendees from claiming any right or title in the property. The judgment "canceled" the contract and permitted the vendor to retain all payments. Our decision therein held the action was one for rescission and reversed the judgment on that ground. The decision and judgment in the cited case were analogous to those in the Nicholson case, supra, and our decision was in accord with that in the Nicholson case.

It is our conclusion that the petition in the present case does not allege an action for rescission and plaintiffs were not required to restore, or offer to restore, the down payment to the defendants.

Defendants further contend the provisions in the contract that upon default by the defendants the plaintiff vendors shall retain all payments made "as agreed rental and liquidated damages" is not valid and enforceable, in the absence of proof and a special finding that actual damages cannot be fixed with reasonable certainty.

Defendants rely on 15 O.S.1961, §§ 214 and 215.

Section 214, states:

"Every contract, by which the amount of damages to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation

thereof, is to that extent void, except as expressly provided by the next section."

Section 215, states:

"A stipulation or condition in a contract, providing for the payment of an amount which shall be presumed to be the amount of damage sustained by a breach of such contract, shall be held valid, when, from the nature of the case, it would be impractical or extremely difficult to fix the actual damage."

Our statements and conclusions hereinbefore set forth largely dispose of this proposition adversely to defendants' contention.

Plaintiffs' action was not one to recover a sum stipulated in a contract as the amount of liquidated damages to be paid by the defaulting party. Plaintiffs' action was to remove the clouds cast upon the title by the claims of defendants. Under the circumstances, as hereinbefore explained, the only issue in the action was the question of the right of defendants to compel plaintiffs to restore the down payment when defendants, with no legal justification, had failed to carry out the terms of the purchase contract.

The case of Mid-Continent Life Ins. Co. v. Goforth, 193 Okl. 314, 143 P.2d 154, cited by defendants, was a case where the vendors, in effect, sued to recover from the vendees a sum stipulated in the contract to be liquidated damages for failure to complete the contract. It is not in point.

▆ Defendants were not entitled to restoration of the down payment on the ground of rescission by plaintiffs, for there was no rescission, and defendants could not recover the down payment in what was in effect an action by them for that purpose.

▆ It is true that an action to quiet title is one of equitable cognizance. However, in the application of the maxim that "he who seeks equity must do equity" the court does not create substantive rights under the guise of doing equity, that is, it does not confer rights when the one who invokes it has none. Stein v. Simpson, 37 Cal. 2d 79, 230 P.2d 816, 819.

Pomeroy's Equity Jurisprudence, Fifth Edition, Vol. 2, § 386, states:

"With respect to the terms which may be imposed upon the party as a condition to his obtaining the relief in accordance with the rule,—that is, the 'equity' which he must do,—it is undoubtedly true, as said by Vice-Chancellor Wigram, that the court obtains no authority from this principle to impose any arbitrary conditions not warranted by the settled doctrines of equity jurisprudence; the court cannot deprive a plaintiff of his full equitable rights, under the pretense of awarding to the defendant something to which *he* has no equitable right, something which equity jurisprudence does not recognize. The principle only requires the plaintiff to do 'equity.' According to its true meaning, therefore, the terms imposed upon the plaintiff, as the condition of his obtaining the relief, must consist of awarding or securing to the defendant something to which he is justly entitled by the principles and doctrines of equity, although not perhaps by those of the common law,—something over which he has a distinctively equitable right."

Defendants' contention has no merit.

The judgment of the lower court is affirmed.

JACKSON, C. J., IRWIN, V. C. J., and BLACKBIRD and McINERNEY, JJ., concur.

WILLIAMS, BERRY, HODGES and LAVENDER, JJ., dissent.